## WHITE vs. ADKINS,

1. If B. sell to K. twenty slaves on a credit, one half of them to be delivered at one time, and the other half at another, the delivery to K. of the first half, absolutely and unconditionally, he complying so far as required with the terms of the contract, vests the title in him to the slaves so delivered, discharged of any lien for the purchase money on the part of B.

ERROR to the Circuit Court of Limestone. Tried before the Hon. Samuel Chapman.

THIS was an action of trover by the defendant against the plaintiff in error to recover for the conversion of three slaves. The bill of exceptions shows that evidence was introduced tending to prove that, in 1826, one John Bell contracted to sell to Chas. King twenty slaves for the sum of $19,000, payable in ten annual instalments; that ten of those slaves were by the terms of

the contract to be delivered and were in fact delivered in 1826, and the remainder in the year 1827; and that on the 11th January 1827, King executed to the defendant in error a deed of trust on the twenty slaves so sold, to secure the payment of $18,000 due on his notes to Bell for the purchase money, a portion of which notes bear date the 20th January 1826, and the remainder the said 11th January 1827. The evidence also conduced to prove that the slaves in controversy were a part of those delivered by Bell to King in 1826, and that after their delivery and before the execution of the deed of trust, King sold and delivered them to one Washington, as whose property they were subsequently sold and purchased by the plaintiff in error, under a judgment and execution against him. The court charged the jury that if Bell agreed to sell twenty slaves to King, ten of them to be delivered 1826, and which were so delivered, and the remainder to be delivered in 1827, until the delivery of the ten in 1827, the title to the first ten delivered in 1826 did not pass. To this charge the defendant below excepted and now assigns it as error.

BRICKELL & ROBINSON, for the plaintiff in error.

WALKER & NOOE, for the defendant.

CHILTON, J.—There is nothing in this record from which it may be infered that the delivery of the ten slaves in 1826 was conditional, or that it was then agreed that any deed of trust should be executed by King to secure the purchase money. Nine of the notes are set out in the bill of exceptions, and five of these are dated the 20th January 1826, the others bear even date with the deed of trust, viz: the 11th January 1827. The whole purchase money amounting to $19,000, and the notes amounting to but $18,000, it results that King must have paid in cash between the time of the purchase and the giving of the last notes the sum of one thousand dollars. The Circuit Court clearly misconceived the law in charging that the title to the ten slaves delivered in 1826 did not vest until the delivery of the remaining ten in 1827. There may be cases where a partial delivery does not vest the property in the vendee, and in which he is regarded as a trustee for the vendor of the parcel delivered, until the delivery of the whole shall have been completed. But

this is clearly not one of them. Indeed, under the decision made by this court in McGehee v. Billingsley, 3 Ala. 679-95, it is quite doubtful, under the facts disclosed in this record, whether any delivery was necessary to vest the title to the slaves in King. It is there said that "where a sale is made for cash, or on a stipulated credit, that it is not the delivery or tender of the thing sold, or the payment or tender of the money, which invests the purchaser with the right of property, or which gives to the seller a right to recover the money. The sale is complete as soon as both parties have agreed to the terms, that is, as soon as one party says, I will take a certain price, and the other says, I will pay it, their rights are fixed. The property in the thing passes to the vendee, and is at his risk, and he may demand the possession upon the payment or tender of the purchase money." The court say "this is to be understood, in cases where the contract does not contemplate some further act in order to place the property in a deliverable state, as to ascertain its price, &c. &c."

But whether, in this case, the property in the slaves passed without delivery or not, it is very clear, according to all the cases which have come under my observation, that when they were delivered absolutely in part execution of the contract, the sale being on a credit, as is shown in this case, the property passed to the vendee, and authorised him to make any disposition of them which he chose, not inconsistent with the rules of law.

While the thing sold remains in the hands of the seller, he has the right to retain it, if the buyer has become insolvent; and in case of the buyer's insolvency, the seller has the further right to stop the goods, or order them to be withheld from the buyer, at any time before such goods go into the power and dominion of the buyer; but after they have been delivered absolutely to the purchaser as his property, there exists no longer any lien in favor of the seller.—Bell's Contr. of Sale, 113 *et seq.;* Cross on Lien, 38 ib. 369.

The law is well settled, that if a person make a *fair sale* of goods on time, or even for cash, and actually deliver them to the buyer as his property, without payment, there no longer exists, either at law or in equity, any lien in favor of the seller, but the property in the goods passes to the purchaser.—See 2 Kent's

Com. 496-7; Chapman v. Lathorp, 6 Cow. 110; Warren v. Sprowle, 2 Mar. 528; Conyers v. Ennis, 2 Mason's Rep. 236; Cross on Lien, 3.

The cases relied upon by the counsel for the defendant in error, to sustain the charge of the court, do not conflict with the view above taken.    In the case of Haggerty v. Palmer, 6 Johns. C. Rep. 437, the delivery of the goods was held *conditional* upon the ground that there existed a *usage* in the city of New York, where the goods were sold at auction for approved notes, that the buyer should send for the goods and the seller send for the · notes.    The Chancellor (Kent) held that as the purchaser knew. of the usage, he received the goods upon the condition that he furnished the notes, and that he held them in trust for the seller until the condition was complied with.    If the delivery was conditional, then there can be no question of the correctness of this decision; but quere ?— The principle upon which the decision rests is correct, the only question is, whether the facts authorised the conclusion that such delivery was upon condition.

In his Commentaries (vol. 2, p. 497,) the learned chancellor says, "If it was even a condition of the contract that the seller was to receive, upon delivery, a note or security for payment at another time, he may dispense with that condition, *and it will be deemed waived by a voluntary and absolute delivery, without a concurrent demand of the security.*"

In the case of Palmer v. Hand, 13 Johns. 435, the plaintiff sold to one Potter a quantity of lumber, which he had on a raft upon the river, and agreed to deliver it to him at one of the docks in Albany, at a price agreed on to be paid on delivery.    Potter then proceeded to Albany, and agreed with the defendant, who kept a lumber yard and dock at Albany, to deliver the lumber to him from the raft, to be sold on commission, Potter obtaining from him some advances on account of it.    The plaintiff, arriving with the raft about sun rise, fastened it to the defendant's dock, and the workmen engaged there began to pile the plank, &c., on the dock, and the plaintiff went in search of Potter.    Before all the lumber was taken from the raft, the plaintiff returned, and forbade the piling of any more, saying that Potter had absconded.    Platt, Justice, in delivering the opinion says, "that upon a contract to sell goods, *where no credit is given*, the vendor has a lien, so that if the goods be actually delivered to the vendee,

and upon demand *then made*, he refuses to pay, the property is not changed, and the vendor may lawfully take the goods as his own, because the delivery was *conditional*." The court, also, lay stress upon the fact that the *whole raft* was to be delivered, and that until such delivery, the plaintiff could not demand the price. The delivery was *in fieri*, and not being complete, and the payment of the price being concurrent with the delivery, the plaintiff was held entitled to retain the lumber, and the consignee of Potter adjudged to have no right to it. Without stopping to enquire whether the *dictum* of the learned judge, who delivered the opinion in that case, as to the right of the vendor to resume the goods after a complete delivery to the vendee, can be sustained, according to the established rules of the common law, it is sufficient for our present purpose to observe that the *decision* does not, in our opinion, furnish any authority in support of the charge in this case. Here, as we have said, a credit was given, and the delivery was complete, and the purchaser complied, so far as we are advised, with the conditions of sale; for it appears he gave notes to the seller before the delivery of the last lot of slaves. It is fair to presume that the execution of the deed was an after arrangement, as it appears to be cotemporaneous with the execution of the last notes, which bear date near one year after the execution of the first; and the charge of the court is not based upon the hypothesis that the ten slaves first delivered were to be subject to such trust in the hands of the vendee.

The Judge proceeded upon the ground that the contract was for twenty slaves, and although half of them were to be delivered in one year and the remainder a year thereafter, and although the purchaser may have fully complied with his contract, yet his title to those delivered did not vest until the seller had fully complied in delivering the remainder. That the contract was entire did not prevent the vesting of King's title to the property delivered in part execution of it. It gave him a right merely to insist upon a complete fulfilment of it on the part of Bell. The delivery in this case being absolute, the title vested in King.

We deem it unnecessary to examine the other question presented by the record, as it will hardly arise upon a subsequent trial.

Let the judgment be reversed and the cause remanded.

PARSONS, J., not sitting.