## WILLIAMS *vs.* HATCH.

[BILL IN EQUITY FOR REFORMATION OF MORTGAGE.]

1. *Notice of mistake to creditor or purchaser.*—To authorize the reformation of a mortgage, as against a purchaser at execution sale against the mortgagor. so as to make it include a slave whose name was omitted by mistake, notice of the mistake before or at the sale is sufficient.

2. *Adverse possession between mortgagee and purchaser at execution sale against mortgagor.*—The possession of a slave by a purchaser at sheriff's sale, under execution against the mortgagor, is not adverse to the mortgagee, so far as to invalidate a subsequent sale under the mortgage.

3. *Foreclosure of mortgage under power of sale; waiver of cash payment.*— A provision in a mortgage that the property shall be sold for cash, being intended for the benefit of the mortgagee, may be waived by him; and if he delivers the property to the purchaser at the sale, without requiring payment, he thereby waives the condition, and the sale vests in the purchaser all the title conveyed by the mortgage.

4. *Rescission of sale by agreement between mortgagee and purchaser.*—A rescission of the sale under the power contained in the mortgage, by agreement between the mortgagee and purchaser, does not annul the foreclosure effected by the sale, nor reinvest the mortgagee with his original rights under the mortgage, so as to enable him to maintain a suit in equity for the reformation of the mortgage.

5. *Variance.*—Where the complainant files his bill in the character of mortgagee, asking the correction of a mistake in the mortgage; while the proof shows that the mortgage has been foreclosed under a power

of sale, and that the complainant has since acquired the interest of the purchaser at the sale,—the variance between the allegations and proof is fatal.

APPEAL from the Chancery Court of Choctaw.
Heard before the Hon. M. J. SAFFOLD.

THE bill in this case was filed by Alfred Hatch, against Stephen Smith, Wheaton Williams, William Horn, and William P. Webb; and sought the reformation of a mortgage, executed by said Smith to the complainant, so as to make it include a slave, who was alleged to have been omitted by mistake, and was afterwards sold under executions issued on judgments against said Smith, in favor of the defendants Williams and Webb, and was purchased at the sale by Williams and Horn. The alleged mistake in the mortgage was admitted by the defendant Smith; but Williams and Horn required proof of it, and alleged that they they had no notice of it before their purchase. The defendant Webb disclaimed all interest in the suit. On final hearing, on pleadings and proof, the chancellor held, that the complainant was entitled to relief; and he therefore decreed a reformation of the mortgage, ordered the slave to be delivered up to the complainant, and directed an account to be taken of the amount due on the mortgage debt, and the hire and profits with which the defendants Williams and Horn were chargeable during their possession of the slave. From this decree the defendant Williams now appeals, and here assigns the same as error.

MANNING & WALKER, and T. B. WETMORE, for appellant.
GEO. F. SMITH, contra.

R. W. WALKER, J.—On the 30th of March, 1852, Smith executed to Hatch a mortgage, for the purpose of securing a sum of money lent by the latter to the former. The intention of the parties was, that the mortgage should embrace a negro woman Phillis, and her two children, Cicero and Margaret ; but, by mistake, the name of Emily

was inserted instead of Margaret, and the mortgage was so recorded. In March, 1855, two judgments, one in favor of Horn, and the other of Webb, were rendered against Smith; and, by virtue of executions issued upon these judgments, the girl Margaret was levied upon, and sold to the defendants Williams and Horn. The complainant alleges, that the mistake in the mortgage was not discovered by him until the levy of the executions upon Margaret; and the evidence tends to show that notice was given to the purchasers, before the sale, that Hatch claimed Margaret under the mortgage referred to, and would sue the purchaser. Shortly afterwards, with the view of having Margaret sold under the mortgage, Hatch filed this bill to·correct the mistake, and recover the girl, who had passed into the possession of the purchasers at the sheriff's sale. Pending this suit, Hatch, having first given the notice required by the mortgage, took possession of Phillis and Cicero, and sold them under the mortgage, together with the girl Margaret, who, however, was not present at the sale, being still in the possession of Williams. At this sale, Pitts became the purchaser, at the price of $1500. By the terms of the mortgage, the property was to be sold for cash. It does not appear that Pitts paid any part of the amount bid by him; but the evidence tends to show that there was some arrangement between Hatch and Pitts, to the effect that, if Pitts could get the negroes, he would become responsible to Hatch for the amount of the mortgage debt then due, and that " Hatch would wait on Pitts till he could pay him." It further appears, that Phillis and Cicero went into the possession of Pitts after the mortgage sale, and .so remained for some three months, about which time the woman Phillis died, whereupon the boy Cicero was returned to Hatch.

[1.] The equity of complainant's bill is sustained by our previous decisions, notwithstanding there is no allegation that the judgment creditors had notice of the mistake before the issuance of their executions. As against the purchasers at execution sale, notice of the mistake before or at

the sale was sufficient.—*Stone v. Hale*, 17 Ala. 557 ; *White-head v. Brown*, 18 Ala. 682; *Pierce v. Brassfield*, 9 Ala. 573; *Herbert v. Hanrick*, 16 Ala. 581.

The bill alleges, that the mortgage was given to secure the payment of $2,000 lent by Hatch to Smith ; but the proof shows, that the sum actually lent was but $1500, and that the mortgage was accepted as a security for the latter amount. We need not, however, determine whether this was a fatal variance.

Various questions are raised as to the validity of the mortgage, the laches of the complainant in seeking its reformation, and the sufficiency of the notice of the mistake to the purchasers at the execution sale. Into these questions we need not go; for, assuming that they should all be decided in favor of the complainant, there will still remain a fatal objection to his recovery, upon the case as now presented.

[2.] The fact that, when the three slaves were sold by the mortgagee, Margaret was not produced, but was in the possession of Williams, the purchaser at the sale under execution against the mortgagor, did not, of itself, render the sale of the said girl ; under the mortgage invalid as to Williams. The possession of Williams was not adverse to the mortgagee, in such a sense as to avoid, so far as the former was concerned, the sale made by the latter.—*Foster v. Goree*, 5 Ala. 424; *Wiswall v. Ross*, 4 Porter, 326; *Echols v. Derrick*, 2 Stew. 144; *Boyd v. Beck*, 29 Ala. 714; *Herbert v. Hanrick*, 16 Ala. 581.

[3.] The three slaves, the woman and her two children, were sold "in the lump," for an entire price; and the mortgagee delivered the two that were under his control to the purchaser, who retained possession of them for several months. The provision in the mortgage that the property should be sold for cash, was for the benefit of Hatch; and he had the right to waive it, and sell, at his own risk, on credit. There is, as we have observed, evidence indicating an agreement between Hatch and Pitts, at the time of the sale, that the former "would wait on the latter till

he could pay him." But, even if there was no such agreement, and the property was sold for cash, as provided in the mortgage, still it was in the power of Hatch to dispense with that condition; and we must hold that he did waive it, by his voluntary and absolute delivery of all of the property that was in his power, to Pitts, without demanding payment. By this actual delivery without payment, the property in all the slaves passed to Pitts, as completely as if he had paid the price.—*White v. Adkins*, 18 Ala. 636.

We need not determine whether the sale was not attended by circumstances for which it would have been set aside, on the seasonable application of the mortgagor, or of the purchaser at sheriff's sale of his equity of redemption. Certainly, the mortgagee, himself the author of these irregularities, cannot claim that the sale should be disregarded on account of them. Neither the mortgagor, nor Williams, the purchaser at execution sale, has applied to set aside the mortgage sale. The latter, in his cross-bill, alleges the sale, and some of the circumstances attending it; and seems to rely upon them, as furnishing evidence of the invalidity of the mortgage; but he does not ask to have it set aside. Under these circumstances, and upon the pleadings before us, the sale made by the mortgagee cannot be disregarded, but must be held to vest in the purchaser all the title conveyed by the mortgage.—*Cheek Waldrum*, 25 Ala. 152; *Foster v. Goree*, 5 Ala. 424; *Benham v. Rowe*, 2 Cal.; *Edmundson v. Welsh*, 27 Ala. 578.

[4.] The alleged subsequent rescission of the sale, by agreement between the mortgagee and the purchaser, could not have the effect of annulling the foreclosure effected by the sale. That would be to put the mortgagor, and the persons succeeding to his rights, at the mercy of the mortgagee and the purchaser from him. Consequently, this subsequent rescission, the cause of which was, probably, the death of the woman Phillis, rather than Pitts' inability to pay, could not do more than transfer to Hatch, as a *purchaser*, the title which Pitts acquired under the mortgage

sale.  It could not reinvest Hatch with his former rights or title as *mortgagee;* and therefore he cannot recover the property as mortgagee.  It is equally clear that, after a mortgage has been foreclosed, the mortgagee cannot, in his character of mortgagee, sustain a bill to correct a mistake in the mortgage.

[5.] Upon the pleadings as they now stand, the only title which the complainant sets up is his title as mortgagee. The sale made by him under the power contained in the mortgage, and the subsequent rescission of the sale, (assuming that the evidence establishes such a rescission,) occurred after the filing of the original bill, and were not made the subject of an amended or supplemental bill.  The case, then, is simply this: The only title which the complainant alleges, is a title as mortgagee, and the only relief he seeks is in his character as mortgagee; but the proof shows that he has parted with his title as mortgagee, and that, if he has any right to relief at all, it is in the distinct character of purchaser of the mortgage title.  This variance between the allegations and the proof is fatal to the complainant's case in its present form.

Decree reversed, and cause remanded.