ALBERT MILLER v. F. M. DAVIS.

REFORMING CONTRACTS; *Power of Courts of Equity.* Where an instrument, in form a mortgage, and intended by the parties thereto to be a mortgage, is executed, and in the execution thereof the parties, through mistake, insert the name of the grantee where the name of the grantor should be, and insert the name of the grantor where the name of the grantee should be, a court of equity may correct the mistake and reform the mortgage, and the mortgage may be foreclosed in the same suit.

*Error from Bourbon District Court.*

DAVIS, assignee of Guy C. Hobart, brought his action against *Miller* to reform and foreclose a certain supposed "mortgage." Said instrument is as follows:

"KNOW ALL MEN by these presents that I, *Guy C. Hobart* of the county of Bourbon and state of Kansas, in consideration of the sum of fifteen hundred dollars in hand paid by *Albert Miller* of the same place, have bargained and sold, and do hereby grant and convey unto the said *Albert Miller*, his heirs, and assigns forever, the following premises, situate in the county of Bourbon, and state of Kansas, bounded and described as follows: [describes the land:] To have and to hold the said premises with the appurtenances *unto the said Albert Miller, his heirs and assigns forever;* provided always, and these presents are upon this condition, that whereas, said Albert Miller hath executed to said Guy C. Hobart his promissory notes, of even date herewith, for the payment of the following sums of money, at the times following: $500 on or before the first day of November 1864; $500 on the first day of November 1865; and $500 on the first day of November 1866, with six per cent. interest from said dates: Now if the

said Albert Miller shall pay said several sums of money to said Guy C. Hobart or his assigns when the same respectively become due, with the interest, then these presents to be void, otherwise to be and remain in full force. In testimony whereof the said Albert Miller has hereunto set his hand and seal this 16th day of May in the year 1864.

"ALBERT MILLER.  [Seal.]"

The case was tried by the court, and upon an agreed statement of facts. · From these facts it appears that Hobart sold to *Miller* 310 acres of land, and certain personal property ; that said lands were valued at the sum of $1050, and the personal property at the sum of $500; that $50 were paid in hand by *Miller* on account of the purchase-money for said lands, and three notes given by *Miller*, as recited in the foregoing instrument; that no designation was made by the parties, then or afterward, for which particular $500 of the entire indebtedness of *Miller* either of said notes was given; that it was the intention of Hobart and *Miller*, at the time of said sale and purchase, that said *Miller* should give to said Hobart a mortgage on the 310 acres of land bought by *Miller* to secure the payment of the three notes; that the paper above copied was the paper made and executed at the time of the making and delivering said notes, and was intended by the parties thereto to be a mortgage on the said land, to secure the payment of the said sum of $1,500; that the two of the said promissory notes maturing first have been paid by *Miller*: and that the third of said promissory notes is due and unpaid. The case was tried at the April Term 1869. The court found in favor of the plaintiff, and gave judgment for the plaintiff for the amount due on the note, and rendered a decree reforming and foreclosing said mortgage. So much of the decreee as relates to the reforming of said instrument is as follows:

"And it is by the court ordered, adjudged, and decreed, that the said instrument in writing, to-wit, [setting it forth, as above,] be and the same is hereby reformed and corrected so as to transpose the names of the mortgagee and mortgagor in the body of said instrument, and cause the name of *Albert Miller* to be substituted for the name of *Guy C. Hobart* in

each place in the body of said mortgage where the name of Guy C. Hobart appears as grantor; and the name of Guy C. Hobart to be substituted for the name of Albert Miller in each place in the body of said mortgage where the name of Albert Miller appears as grantee; and it is further adjudged and decreed, that the said instrument stand and operate at law and in equity as between the said parties to this action as a mortgage and conveyance by the said Albert Miller to the said Guy C. Hobart in the same manner and with the same effect as though the same had been originally executed in the manner hereby adjudged to be by such correction and reformation aforesaid."

To this decree *Miller* excepted, and a new trial being refused, he brings the case here for review.

*W. C. Webb*, for plaintiff in error:

1. No complaint is made of the judgment *in personam*. The whole amount agreed to be paid *for the land*, has been paid, so there is no *equity* in insisting upon a lien upon the land for the note given for the personal property, even if an "equitable mortgage" were recognized in this state, as it is not: *Simpson v. Mundee*, 3 Kas., 172; *Brown v. Simpson*, 4 Kas., 76.

2. Had the instrument, called a "mortgage" any validity? It is in *form* a "bond for a deed" *from* Hobart *to* Miller, but it is signed by Miller. It is admitted that when it was executed, it was *intended* as a mortgage; but the paper on its face is a nullity; and such admission cannot breathe it into vitality. If the parties had expressly, by *oral* agreement, contracted that the two notes given for the purchase-money should be "a lien on the land," the law would not aid the vendor in asserting any such claim. It is not denied, that a court of equity may reform a written agreement; or rather, it is admitted that it has been settled by numerous adjudicated cases that a court of equity will correct certain mistakes of fact committed by the parties, so as to give effect to their actual contract or agreement. But they must be *mistakes of fact*, that is, the result of mischance, accident, or surprise.

See 1 Story's Eq. Jur., §§ 110 to 118, and §§ 141 to 158. "Equity may compel parties to execute *their agreements;* but it has no authority to *make agreements* for them, or to *substitute* one agreement for another."–§ 115. See also, *Delap v. Tabor,* 16 Wis., 654. The general rule is, as stated by the supreme court of the United States, that "a *mistake of law* is not ground for reforming a deed founded on such mistake."–1 Story Eq., § 116. And see *Pullen v. Ready,* 1 Atk., 587, 591, cited in 1 Story Eq., § 113. The more usual mistakes which a court of equity will correct are in descriptions of land — as in 6 Blackf., 215 — the contract itself, unreformed, being valid. Mere *omissions* of words of limitation and qualification, as in *Tilton v. Tilton,* 9 N. H., 385, and *Newcomer v. Kline,* 11 Gill & J., 457, will be supplied by the court, on proper proof. See also *Stanley v. Goodrich,* 18 Wis., 505. But equity will not relieve a person against the consequences of his own inattention, or want of care. *Custard v. Custard,* 22 Texas, 49.

There is no allegation of *fraud, deception,* or surprise, in the plaintiff's petition. The words are, that by "accident and mistake" the name of Miller was inserted for Hobart, and *vice versa.* But this allegation is explicitly denied by the *answer of Miller;* and there was no proof or evidence offered or given except the written agreement or stipulation of Miller and Davis, signed by counsel, and appearing in full in the record; and there, no *accident,* no *mistake,* is claimed or admitted *respecting any fact.* The agreed statement of the facts, is, that *the paper* claimed by plaintiff to be a "mortgage," was, when executed, "intended by the parties to be a mortgage." *That it was not a mortgage was a mere mistake of law* —a mistake regarding the *legal import* or *legal effect* of a paper whose contents were well known and understood by both parties. To illustrate: Hobart sold the land to Miller, and agreed to convey; Miller agreed to give his notes, and secure them by mortgage. Suppose that both deed and mortgage, in due and proper form had been drawn, but by accident the supposed deed from Hobart *to* Miller *was signed by Miller,*

and the mortgage from Miller *to* Hobart *was signed by Hobart.* The paper signed by Hobart would be, by the parties "intended as a deed," and the paper signed by Miller would by the parties "be intended as a mortgage:" *What would they be in law?* Nothing. Could a court of equity *compel* the parties afterward, and against the wishes of either, to *execute* the papers, as originally intended? No. Could a court of equity "reform" both instruments against the wishes of either? No. Had Miller taken and held possession under his *parol* purchase, and paid, (as he has in this case fully paid,) the purchase-money, a court of equity would protect him by compelling a specific performance of the contract on the part of the vendor, if he refused to convey. But a bare "mistake" is not sufficient. A careful examination of the cases in which the courts have reformed contracts will show that the contract or agreement, *without being reformed,* was of such nature as to be binding on the parties. It might not be just what they had agreed it should be; but *such as it was,* it was obligatory. In the case at bar the paper called a mortgage, as it stands, is an absolute nullity. There is nothing to reform. The court below *made a* contract for the parties — an entire contract. It *made a writing* to express and evidence an oral agreement — which oral agreement was void under the statute of frauds. Analogous to the case at bar is that of *Catharine Alter's Appeal.* 67 Penn. St., 341. An aged couple, Geo. A. Alter, and Catherine his wife, each owning property, and having no children, determined to make their wills in favor of each other, so that the survivor should have all they both possessed. Their wills were drawn precisely alike, *mutatis mutandis,* and laid before them for execution. Each signed a paper, which was duly witnessed, indorsed, and sealed up. After the death of Geo. A. Alter, the envelopes were opened, and it was discovered that each had *by mistake* signed the will of the other. The court held that there was no will, and that the courts were powerless to grant relief, by reforming the instrument or otherwise; and a special act of the legislature, authorizing the court to take proof of the mistake, and reform the

will, was adjudged unconstitutional and void. Now apply the authority of *Alter's Appeal* to the case at bar: Hobart agrees to sell land to Miller; he procures a "bond for a deed" to be drawn, omitting only the clause "In witness whereof," etc. Such bond performs the double office of a deed of conveyance, passing the equitable and securing the legal title, and a mortgage securing the unpaid purchase-money. Upon consultation, the parties conclude to execute separate instruments, Hobart a "deed" in form, Miller a "mortgage" in form. Both instruments are drawn and laid before them. Hobart signs the deed. Miller by mistake takes up the "bond for a deed," writes, "In witness whereof," etc., and signs that, supposing that he is signing the "mortgage." The papers so signed are acknowledged, and recorded. Miller pays all he agreed to pay for the land. Nearly five years afterward it is discovered that *he had signed the wrong paper* — and the court is asked to "reform" that which is on its face an absolute nullity, and make it a valid contract. How the accident did occur is of no consequence. There is nothing in the record showing that it did not occur precisely as suggested. Whatever the circumstances were, the mistake was one that the courts cannot correct. Suppose Hobart by mistake had signed *the notes* instead of Miller: could he, or could Davis as transferree, maintain an action *on them, as Miller's notes?* Certainly not — nor could a court of equity reform them. Suppose Miller had executed a paper in these words:

"One year after date I promise to pay to *Albert Miller*, his heirs, executors or administrators, $500, with interest. May 16, 1864.                                                   ALBERT MILLER."

could *Hobart*, or could Davis as *Hobart's* assignee, maintain an action thereon against Miller? Could the court "reform" the paper, by substituting *Hobart's* name in place of Miller's, as payee? Most certainly not. The remedy in all such cases of mistake, where any exists, is in disregarding the writing entirely, and counting on the oral agreement between the parties. Where this cannot be done, there is no remedy. There is *no* "contract" in writing upon which the power of the court

can operate; and there is no such note or memorandum in writing signed by the party to be charged therewith, as takes the case out of the statute of frauds.

The opinion of the court was delivered by

VALENTINE, J.: Guy C. Hobart sold certain real estate and personal property to Albert Miller, the plaintiff in error, for the sum of $1,550, the real estate being valued at $1,050, and the personal property at $500. The agreement between them was as follows: Hobart on his part was to execute to Miller a deed for the land; Miller on his part was to pay Hobart $50 down, and execute to him three promissory notes for $500 each, and was to execute to Hobart a mortgage on the land to secure the payment of the three promissory notes. All this was done in accordance with the agreement of the parties, except that in executing the mortgage the name of Hobart was once used in the place of Miller, and Miller's name was three times used instead of Hobart's. In every other respect the original agreement of the parties was fully carried out; and in every other respect the mortgage was correct, and in due form. The names of Miller and Hobart were each used twice in said mortgage correctly, and the mortgage was executed by the proper person, and in due form. Two of the promissory notes were paid when they became due. The other note and the supposed mortgage were assigned to F. M. Davis, the defendant in error, (who was plaintiff below.) Davis sued Miller on the note and supposed mortgage, and prayed for a judgment on the note and for a decree that the supposed mortgage should be re-formed and foreclosed. The action was tried by the court, without a jury, on an agreed statement of facts, and the prayer of the plaintiff below was granted. It is agreed by the parties, that the supposed mortgage was drawn up defectively through a mutual mistake of the parties; that it was intended that a proper mortgage should be drawn up and executed, and it was supposed that such a one had been drawn up and executed; but how the mistake occurred in drawing

the mortgage is not definitely shown. If it was a mistake purely of law we suppose the mistake cannot be corrected by a court of equity; and if the parties had a clear conception of every word they used in the mortgage, but mistook the legal effect of the instrument, we suppose it was purely a mistake of law. We do not however wish here to assert or admit that no mistake of law can ever be corrected by a court of equity. There may possibly be some cases where such mistakes can be corrected: *McNaughton v. Partridge*, 11 Ohio, 223; *Evarts v. Strode*, 11 Ohio, 480; *Clayton v. Freet*, 10 Ohio St., 544; *Ormsby v. Longsworth*, 11 Ohio St., 653, 666; *Green v. Morris*, 1 Beasly, (N. J.,) 165; *Mortimer v. Pritchard*, 1 Bailey Ch., (S. C.,) 505; *Lucas v. Lucas*, 30 Georgia, 191, 202; *Clayton v. Bussey*, 30 Georgia, 946; *Longhurst v. Star Ins. Co.*, 19 Iowa, 369; *Drew v. Clarke*, Cook, (Tenn.,) 374. But if the mistake in this case was a mistake purely of fact, or if it was a mistake partly of law and partly of fact, then we suppose that there can be but little doubt but that the mistake may be corrected, and the mortgage reformed. And if the parties to the instrument were mistaken in facts, it makes no difference whether the person who drew the instrument was mistaken in law or in fact, or was not mistaken at all. In the case of *Hunt v. Ransmanier's Adm'r*, 1 Peters, 13, the supreme court of the United States use the following language: "Where an instrument is drawn and executed which professes or is intended to carry into execution an agreement, whether in writing or by parol, previously entered into, but which by mistake of the draftsman, either as to fact or law, does not fulfill, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement." See also, *Scales v. Ashbrook*, 1 Metc., (Ky.,) 358; *Canedy v. Marcey*, 13 Gray, 373. Every person is presumed to know the law; and unless the facts of a case show affirmatively that a party has manifestly mistaken the law, it will be presumed that any mistake which has occurred was a mistake purely of fact. The courts will not presume against the evidence, or without

evidence, that some person has been ignorant of the law, or has been mistaken with regard to the law, when the presumptions of the law are all the other way. This principle holds with overwhelming force where the law is plain, where it has long been established, and where it is generally, if not universally and actually, as well as presumptively known by every adult person of sound mind within the commonwealth. In such a case it will always be presumed, if not against strong evidence, that something else besides a mistake of law has intervened to produce the result. The fact that the law is so well and universally understood by all the people is in such a case strong evidence that no mistake of law has occurred, and that some other ground exists upon which a court of equity may grant the proper relief: 1 Story Eq. Jur., §§ 128, 138e, 138f, and note 1, and § 138g. In the present case the name of Hobart was once inserted in said mortgage as grantor where the name of Miller should have been inserted, and the name of Miller was three times inserted in said mortgage as grantee where the name of Hobart should have been inserted. Now can it be supposed that any person could mistake the law so as to suppose a grantor to be a grantee, or a grantee to be a grantor? Such a thing can hardly be imagined as possible. But it is easy enough to suppose that a person drawing a mortgage might carelessly and inadvertently insert the name of the grantee where the name of the grantor should be, and insert the name of the grantor where the name of the grantee should be. And this was probably the fact in the present case. At least, taking the record as it is presented to us, we must presume that such was the case. If so, the mistake was one of fact, and not of law. But even if the person drawing the mortgage intentionally inserted the names wrongfully in the mortgage, still, as the parties who executed the mortgage did so in ignorance of any such intention, their mistake was one of fact, and not one of law.

It seems to be claimed by counsel for plaintiff in error that an instrument must be valid and binding upon the parties in order to be reformed. This is certainly not correct. It is true,

that the original agreement must be one that the parties may legally make. It is equally true that the agreement that the parties attempt to put in writing must be one that they could legally enforce if it were such as they intended to make it. But it is not true that the instrument when made shall in every case express a legal and valid contract or agreement. It has been held that a written contract which through mistake is made to appear upon its face to be usurious, and therefore void under the statutes of the state where made, may be corrected and reformed in equity so as to conform the instrument to the real agreement of the parties, and then enforced: *Mortimer v. Pritchard*, 1 Bailey Eq., (S. C.,) 505. It has also been held that a blank bond, dated and signed, but not showing who the obligee was, nor even showing who the obligor was except by the signature, with scarcely any of the blanks filled, and therefore void at law, might nevertheless be corrected and enforced in equity: *Gray v. Rumph*, 2 Hill Ch., (S. C.,) 6. In Iowa it has been held that where an intended deed for a town lot was void because the deed gave the number of the lot and block only, and did not state in what town the lot and block were situated, the error could be corrected in equity: *Stewart v. Brand*, 23 Iowa, 477. In Connecticut it has been held that a bond void because through accident or mistake no seal was attached to it may nevertheless be made good in equity: *Montville v. Houghton*, 7 Conn., 543. And in the same state it has been held that equity will relieve and supply the defect where a deed is void because not subscribed by a sufficient number of witnesses: *Smith v. Chapman*, 4 Conn., 344; *Watson v. Wells*, 5 Conn., 468; *Carter v. Champion*, 8 Conn., 549. In Maryland it has been held that where a promissory note, or "single bill" as there termed, was void at law because of the omission through mistake of the word "dollars," equity would supply the defect, and make the note valid: *Newcomer v. Kline*, 2 Gill & Johnson, 457. It has often been held where a deed of conveyance has been made which should by previous agreement include certain lands, but which from accident or

mistake does not include them, and is therefore void as to such lands, equity will correct the mistake and insert such lands in the deed: *White v. Wilson*, 6 Blackf., 448; *De Remer v. Cantillon*, 4 Johns. Ch., 85; *Tilton v. Tilton*, 9 N. H., 385. And for omissions being supplied, see *Stanley v. Goodrich*, 18 Wis., 505; *Williams v. Hatch*, 38 Ala., 338. In the case of *Kennard v. George*, 44 N. H., 440, 445, George and wife bought a farm of Mace Kennard, furnishing the purchase-money, and the parties agreeing to give to him a valid security for his money, but instead of doing so they gave him through mistake as to the legal effect of the instrument a note and mortgage executed by the wife of George, she being a *married woman*, which note and mortgage were therefore under the laws of New Hampshire void. It was nevertheless held that the court could correct the mistake and grant the proper relief. In Kentucky, where the title to land is conveyed there is under their statutes no vendor's lien secured "unless it be expressly stated in the deed what part of the consideration remains unpaid." (2 Stant. Rev. Stat., 230, § 26.) But where the deed does show what part of the consideration remains unpaid the vendor has a lien therefor on the land equivalent to a mortgage lien in Kansas. Under the Kentucky statutes a deed was executed for certain land, and two promissory notes given for the purchase-money remaining unpaid; but through mistake the deed did not show how much of the purchase-money remained unpaid. The vendor therefore had no written lien at all. His written mortgage was not merely void, but he had none at all. The court nevertheless held that the deed could be reformed, a written mortgage thereby being virtually created, and the lien enforced: *Worley v. Tuggle*, 4 Bush., (Ky.,) 168. The case of *Scales v. Ashbrook*, 1 Metc., (Ky.,) 358, has some points of resemblance to the case at bar. In that case Marshall and Ashbrook borrowed some money of Scales to pay a debt for which they were both liable, and executed their joint and several promissory note to Scales for the same. Some time afterward Marshall and Ashbrook agreed with Scales to take

up their note and give him a bill of exchange in payment therefor, *on which Ashbrook was to remain liable to Scales.* But by mistake and ignorance as to the order in which parties to such paper are held to be liable, Scales was made the drawer and Ashbrook the payee and indorser, whereby, instead of Ashbrook remaining liable to *Scales on said bill, Scales became and was liable to Ashbrook.* The court held that in such a case equity would grant the proper relief, and would compel Ashbrook to pay Scales the amount of the bill. Many other illustrations might be given if it were thought necessary. Courts cannot of course make contracts for parties, but they can reform written instruments so as to make such written instruments express the real contracts of the parties. Contracts affecting real estate must of course under the statute of frauds be in writing. But there are many cases where the statute enacted to prevent frauds by requiring contracts to be in writing does not apply so as to enable a party to commit a fraud, and this is one of such cases. The judgment of the court below must be affirmed.

All the Justices concurring.