CROZE v. ST. MARY'S CANAL MINERAL LAND CO.

1. CHATTEL MORTGAGES — FORECLOSURE — CONVERSION — SALE — PLACE.

Where mortgaged logs are mingled with logs belonging to another, and it is impossible to sort them at the place of seizure, the mortgagee is not guilty of conversion in removing them to a harbor in the direction of market, for the purpose of sorting and selling them, as a mortgagee is not bound to sell the mortgaged chattels at the place of seizure.

2. SAME—SALE ON CREDIT.

A sale of mortgaged chattels by the mortgagee in possession on credit does not constitute a conversion, but only renders him accountable to the mortgagor on the same basis as if he had received cash.

3. SAME—NEGLIGENCE.

A mortgagee of logs having rightfully acquired actual possession, his act in negligently removing them from the banking ground on the shores of Lake Superior at an improper time and in an improper manner, and his neglect for an unreasonable time to sell them after taking possession, is not a conversion thereof, but merely renders him liable for the resultant damages.

4. SAME—DAMAGES—EVIDENCE.

Where logs covered by a chattel mortgage were mingled with logs belonging to another, and there is no evidence by which

it can be determined what portion of the logs, which have been permitted by the mortgagee to remain on the rollways until they are deteriorated in value, were not covered by the mortgage, and no evidence as to the amount of certain liens which existed thereon, the mortgagor's assignee is not entitled to recover for such alleged deterioration.

ON MOTION FOR REHEARING.

SALES—DELIVERY IN BULK—PASSING TITLE.

. Where, prior to the alleged conversion of certain logs by a mortgagee, the mortgagor had sold a part of an entire mass of logs which included both the logs mortgaged and those sold, and the joint agent of the buyer and mortgagee had taken possession of the entire mass for the purpose of sorting and delivering them to the respective parties entitled thereto, the buyer had title to such of the logs as it had agreed to purchase.

Error to Houghton; Streeter, J. Submitted June 15, 1905. (Docket No. 11.) Decided March 27, 1906. Motion to modify opinion granted May 24, 1906.

Trover by Joseph Croze against the St. Mary's Canal Mineral Land Company. There was judgment for plaintiff, and defendant brings error. Reversed.

*Chadbourne & Rees*, for appellant.

*Lawrence L. Croze* and *Tarsney & Fitzpatrick*, for appellee.

CARPENTER, C. J.  Plaintiff, as the assignee of a cause of action originally belonging to one Will C. Baudin, brought this action for the conversion of certain timber, and recovered verdict and judgment in the lower court. Defendant asks us to reverse that judgment.

The material facts are as follows: December 27, 1900, Baudin executed and delivered to defendant a chattel mortgage covering the timber in question to secure the payment of an indebtedness of $4,480. In the mortgage the timber was described as "all the logs and timber now

cut or that may be cut by the said party of the first part [upon certain described sections of land] excepting from the above 1,000,000 feet, board measure, of long timber 18 feet long and upward, heretofore sold out of said lot of logs to the Tamarack Mining Company." The mortgage provided that the indebtedness should be paid July 1, 1901, and authorized the mortgagee, in case of default, to take possession, and sell at public auction " or at his option at private sale with or without notice " sufficient of the mortgaged property to satisfy the said debt, interest, and reasonable expenses. Baudin did not pay this indebtedness at maturity, and in September, 1901, the defendant through a deputy sheriff took possession of the mortgaged property. When this possession was taken, the logs were cut, part of them had been towed to Portage Lake, and the remainder was on the rollways cn the shore of Lake Superior at Misery Bay, a place some distance from Portage Lake. At that time the logs belonging to the Tamarack Mining Company had not been delivered and were commingled with the logs of which defendant took possession. It is conceded, however, that the title to the same belonged to the Tamarack Mining Company. The day after defendant seized this property it and said Tamarack Mining Company entered into an agreement to have the logs " properly boomed and towed to Portage Lake, and there properly sorted and delivered to the several respective parties entitled thereto," and for this purpose appointed I. A. Moore as their agent and custodian. They also agreed that each party should " bear and pay each its proportion of the cost and expense based upon the number of feet the logs and timber actually sorted and delivered each." At this time there were liens against these logs and timber aggregating a large amount. These were subsequently paid by defendant and the Tamarack Mining Company. Their precise amount is not shown in the record, nor was it shown on the trial in the court below. Mr. Moore, the joint agent of defendant and Tamarack Mining Company,

proceeded to tow the logs on the rollways in Lake Superior to Portage Lake in conformity with the terms of said contract. These logs were moved between September 14 and October 11, 1901. I think it is but fair to say that the evidence justly warranted the inference that defendant was negligent in attempting such work at that time. It was the stormy season of the year, and the jury might have found that the work was done at increased expense and resulted in the loss of many logs. Not all of the logs on Misery Bay were removed. There was left on the rollways at that place 466,000 feet, and these have never been removed. Owing to the approach of winter the logs at Portage Lake were not sorted until the spring of 1902. They were then sorted and there was delivered to the Tamarack Mining Company as its property logs to the amount of 528,358 feet. In June, 1902, defendant sold by private sale, on credit, the remainder of the logs for the sum of $7,710.53, and the testimony shows that this was less than the expense of moving the same and the amount expended in paying liens.

The question of paramount importance in this case is whether, under his declaration, plaintiff made a case entitling him to take the judgment of the jury. The declaration contains two counts. The second count is the ordinary count in trover charging the defendant with converting the property. The first count charges that defendant converted the property by removing the same before sale from the place where it was seized, and it also charges that the timber left at Misery Bay was damaged by reason of defendant's negligence in not caring for and protecting the same. The trial judge overruled plaintiff's contention that defendant, by removing the logs to Portage Lake, thereby converted the same to its own use. We think he was right. There is no inflexible rule requiring the mortgagee to sell the mortgaged chattels at the place of seizure. See *Olcott* v. *Bynum*, 17 Wall. (U. S.) 44. The circumstances in this case forbade such a sale. Part of the property seized was already at Portage Lake. That place lay in

the direction of the market. Commingled with these logs were the logs of the Tamarack Mining Company. Those logs had to be withdrawn before the mortgaged property could be sold, and we think, therefore, it was the duty of defendant to gather the property together at Portage Lake in the manner it attempted. This is made clear by the testimony of plaintiff's assignor, Baudin, who says:

"The logs could not have been sorted out on the bank nor in the slough. * * * In order to get the Tamarack logs, it would be necessary to bring all the logs together down at Portage Lake, or to some harbor, and then sort them after they were brought down."

It is also contended by plaintiff that defendant converted the property when it sold the same on credit. This contention was also properly overruled by the trial judge. While it is not to be denied that, in one sense, it is the duty of a mortgagee to sell for cash, it is also true that the only penalty for the breach of this duty is to hold him responsible for the damages thereby caused. That is, to charge him on the same basis as if he had received cash. See *Williams* v. *Hatch*, 38 Ala. 338; Jones on Chattel Mortgages (4th Ed.), § 800.

The trial court charged the jury that, if defendant attempted to remove the property from the shores of Lake Superior at an improper time, it thereby converted such property; that, if the defendant neglected for an unreasonable time to sell the mortgaged property after taking possession, that, too, was a conversion; and that it must be held to have converted the 466,000 feet left on the shores of Lake Superior at Misery Bay because it left the same there an unreasonable time. Was this charge correct? It must be conceded that it was the duty of defendant to make a sale of the property within a reasonable time after seizure and to effect its removal with due diligence, and while it does follow that it would, in some form of action, be answerable in damages for a failure to perform this duty, it by no means follows that such a failure would amount to a conversion of the property. Does it? To maintain an ac-

tion for conversion, one must either have actual possession, or the immediate right to possession. *Stevenson* v. *Fitzgerald*, 47 Mich. 166; *Axford* v. *Mathews*, 43 Mich. 327; *Foster* v. *Mining Co.*, 68 Mich. 188; *McGraw* v. *Sampliner*, 107 Mich. 141. Plaintiff's assignor did not have the actual possession. Defendant had that. Defendant was a mortgagee in possession. It had the right to retain that possession so long as its mortgage lien existed. Plaintiff had no right to possession, unless the wrongful conduct of the defendant had terminated its title to the property. Had defendant committed such a wrong as to destroy its mortgage lien, and to give plaintiff an immemediate right of possession of the mortgaged property ?

An instructive case upon this question is *Donald* v. *Suckling*, L. R. 1 Q. B. 585. It was there decided that it was not a conversion for the pledgee of a chattel to repledge the same, before the maturity of the debt due, for a larger sum than that debt, upon the ground that the wrongful conduct complained of did not destroy the special property of the pledgee. In the course of an opinion in that case, Blackburn, J., said:

" But I think in all these cases (cases in which it was held trover might be maintained) the act done by the party having the limited interest was wholly inconsistent with the contract under which he had that limited interest, so that it must be taken from his doing it that he had renounced the contract."

In *Rose* v. *Page*, 82 Mich. 105, it was held that a mere irregularity in the sale of chattel mortgaged property in good faith would not subject the purchaser or mortgagee to an action in tort, in which the value of the property can be recovered, leaving the mortgage debt unpaid. This is only another way of saying that an action of trover could not under those circumstances be maintained. In *Brown* v. *Mynard*, 107 Mich. 401, this court said:

"A void attempt to foreclose a chattel -mortgage, in which the mortgagee bids in and retains the property, is not a conversion."

It follows from these principles that neither unreasonable delay in selling mortgaged property, nor negligence in caring for the same, constitutes conversion. Indeed, there is abundant authority for saying that the total loss of a chattel arising from the mere negligence of a bailee does not constitute a conversion. *Anonymous*, 2 Salk. 655; *Ross* v. *Johnson*, 5 Burr. 2826; *Packard* v. *Getman*, 4 Wend. (N. Y.) 613; *Hawkins* v. *Hoffman*, 6 Hill (N. Y.), 586. In *Marseilles Manfg. Co.* v. *Perry*, 62 Neb. 715, a decision of the supreme court of Nebraska, it was held that a mortgagee, who took possession of mortgaged chattels and retained them for more than two years without making a sale, was responsible for their value as at the time he seized them. This case is, in our judgment, no authority for the proposition that unreasonable delay in removing the property from Misery Bay amounted to a conversion. Trover for conversion is one of the common-law forms of action abolished in Nebraska, and in deciding the case the court was not called upon to consider what constituted a conversion. It may also be said that, even if defendant converted the logs remaining at Misery Bay, the reasons hereafter pointed out as decisive against plaintiff's right to maintain an action of damages for the deterioration of that property would have prevented a recovery.

The distinction between an action for damages and an action for conversion is not merely technical. One who has converted property is liable for the entire value of the property at the time of the conversion, while one whose wrong has damaged that property is held responsible only for those damages. For instance, in this case, the defendant would, in an action (whether in assumpsit or on the case) for damages, be bound to make good all losses arising from negligently towing the logs; but, according to the law of conversion as applied by the trial judge, he was responsible for the value of all the logs towed, "and the question of whether there were losses cut no figure whatever." It is our judgment, therefore, that the negli-

gence of the defendant in towing the logs, its delay for several months to sell them, as well as its delay in moving the same from the banks of Lake Superior, did not destroy its special property therein, and therefore did not give the plaintiff such a possessory right as to entitle him to maintain an action for conversion.

There remains for consideration this question: Did the evidence warrant the jury awarding plaintiff damages on account of defendant's failure to care for the 466,000 feet of logs left at Misery Bay? There was evidence that these logs, in consequence of the failure to remove them, deteriorated in value, but there was no evidence by which the jury might say what portion of these logs belonged to the Tamarack Mining Company. (And to make up the 1,000,000 feet belonging to that company there was still due it more than 470,000 feet.) Nor was there evidence of the amount of liens — and concededly there were liens upon this property. There was, therefore, no basis upon which a jury might find that this deterioration damaged plaintiff. The trial court should therefore have directed a verdict in favor of defendant.

Judgment reversed, and a new trial ordered.

McALVAY, GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.

### ON MOTION TO MODIFY OPINION.

CARPENTER, C. J.  In a motion to modify our opinion deciding this case (ante, 514) plaintiff states that he did not concede, as therein stated, that the title to the 1,000,000 feet of logs described in the mortgage "as heretofore sold to the Tamarack Mining Company" actually passed to that company. We supposed that plaintiff intended to make this concession from several circumstances, the most significant of which was his failure to deny the assertion in defendant's brief that he did make it. We are now persuaded that he did not intend to make it, and we therefore state in this supplemental opinion that he did not make it.

We think, however, that it is our duty to say that this statement will not change the effect of our former opinion, because it must be held as a matter of law that the title to the said 1,000,000 feet did pass to the Tamarack Mining Company before the wrongs complained of by plaintiff were committed. Before the commission of those wrongs the joint agent of the Tamarack Mining Company and of defendant took possession of the mass of logs, of which the Tamarack Mining Company's logs were a part, for the purpose of sorting and delivering them "to the several respective parties entitled thereto." By this act, which was authorized by its contract of sale, the Tamarack Mining Company acquired title to such of the logs (viz., said 1,000,000 feet) as it had agreed to purchase. In *Lamprey* v. *Sargent*, 58 N. H. 241, it was held:

"In the case of a sale of a part of an entire mass of goods, such as coal, brick, flour, and grain, if the purchaser is allowed to take possession of the whole for the purpose of enabling him to separate the part sold, the title to that part passes to the purchaser."

See, also, 1 Mechem on Sales, § 703; *Iron Cliffs Co.* v. *Buhl*, 42 Mich. 86; *Crofoot* v. *Bennett*, 2 N. Y. 258; and *Weld* v. *Cutler*, 2 Gray (Mass.), 195.

MCALVAY, GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.