## McCRORY et al. v. THOMPSON.

Nos. 22232, 22233.   Nov. 13, 1934.

Sigler & Jackson, for plaintiffs in error.

Arleigh Davis, for defendant in error.

PER CURIAM. In the year 1924, Ferris M. Thompson bought certain theater equipment from the Producers State Bank of Wilson, paying part cash and giving his notes secured by chattel mortgage on the equipment for the balance of the purchase price. On May 12, 1926, he executed the two notes in controversy in this action as renewal of the balance of the indebtedness then remaining unpaid, the bank still holding the original chattel mortgage unreleased and as security. About July, 1926, the bank went into liquidation, and Felix B. Jones (who was one of the officers of the bank at the time of the renewal of the notes referred to) was appointed liquidating agent by the State Bank Commissioner. In the latter part of the year 1929 the notes were sold by order of the court to the plaintiffs, McCrory and Samples, and suit was by them brought against Ferris M. Thompson for the unpaid balance on the notes. No foreclosure was asked of the chattel mortgage, and any rights thereunder were waived. By way of answer the defendant specially alleged as to each of said notes—

"That while said note was the property of the Bank Commissioner of the state of Oklahoma, this defendant delivered to said Bank Commissioner through his duly authorized agent, the liquidating agent of the Producers State Bank, all of said property covered by said mortgage; that said mortgaged property was of sufficient value to cover the balance due on the note herein sued on, together with the other note above referred to; that the Bank Commissioner failed to advertise and sell said property, and that there has never been a legal determination of the value of said mortgaged property, and that no credits were given on either of said notes for said mortgaged property; and the defendant specifically denies that he owes any sum on the note sued on herein."

No testimony was offered to support these allegations except that of the defendant, Ferris M. Thompson. His testimony on this

point on both direct and cross-examination is as follows:

"We closed it down because it wasn't a paying proposition, and I went to Mr. Jones and asked if he wouldn't take charge of that in the back end of his building there, so as to cut this rent down, and Mr. Jones said it would be up to the bank to take care of that, and that's about as far as I— Q. It would be up to the bank to take care of what? A. The rent if it stayed there. * * * Q. What did you say when you turned it back; what did you say to Mr. Jones and what did Mr. Jones say to you? A. I met Mr. Jones on the street, and I said I didn't want this rent piling up on me at the Empress Theater, and I said I thought it would be a good idea for me to put this in the back end of that building, but he said there wasn't enough room, and we went on talking and he said then that the bank would have to take care of it. Q. He never did agree to take it and give you credit for it, did he? A. Well, I understood—Q. I am not asking you what you understood; but what did he say, A. He told me that the bank would take care of it. Q. The bank never got a dollar of this, did it? A. I figured he would take it because he told me that the bank would take care of it."

The building in which the Empress Theater was operated and in which the equipment at all times remained and was held for the unpaid rent, was owned by Will Ward. The building in which Thompson suggested the equipment be stored in the back end to stop the running of this rent, was the bank building, which was in charge of Jones, the liquidating agent. This testimony of Thompson is contradicted in its material statements by both the liquidating agent and Ward, but the weight of the testimony is a matter of no concern here, as that was solely within the province of the jury.

At the conclusion of the trial the plaintiffs moved the court for judgment on the notes, and this motion was overruled and the case submitted to the jury on the issue of the taking of possession of the theater equipment by the liquidating agent and conversion occasioned by undue delay in foreclosure, as quoted above from defendant's answer—and to this action of the court in submitting the case to the jury, proper exceptions were reserved by the plaintiffs. The jury returned a verdict in favor of the defendant, Thompson, and the plaintiffs, McCrory and Samples, have appealed to this court.

An examination of the opinions of the courts of last resort in the United States shows a clear division of authority on the question whether undue delay in foreclosure of a chattel mortgage after taking possession constitutes conversion, or whether the mortgagor's remedy is damages if there is a depreciation in the market value of the property in the interim of the undue delay. See the text and authorities cited in the notes in 12 Corpus Juris, at page 590, and also the case of J. I. Case Threshing Machine Co. v. Barney, 54 Okla. 686, 691, 154 P. 674, and the case of Croze v. St. Mary's Canal Mineral Land Co. (Mich.) 107 N. W. 92, which is cited with approval by our court in the Threshing Machine Case above referred to. In the Croze Case just above mentioned, the Supreme Court of Michigan held that:

"It follows from these principles that neither unreasonable delay in selling mortgaged property nor negligence in caring for the same would constitute conversion."

However, no choice is by this court made in this opinion as between these two divergent lines of authority as to remedy of conversion or damages; but the division is merely recognized on account of the fact that the background of the case and the briefs on appeal suggest the question.

No witness testifies that the liquidating agent of the bank ever took actual possession of the mortgaged property or exercised any dominion over it. It appears from the testimony of all witnesses offered on both sides of the case that at the time of the conversations testified about by the defendant, Thompson, and the alleged delivery of the equipment to the liquidating agent, and at all times thereafter and down to the time of the trial in the court below, the mortgaged equipment was in the actual possession of Will Ward, who owned the building in which the theater had been operated, and he was holding it as against all persons for his unpaid rent. Under no theory of the law is the testimony of the defendant quoted sufficient to show delivery of possession by the defendant, Thompson, and acceptance of possession by the liquidating agent so as to place upon the liquidating agent any legal duty to foreclose under penalty of conversion for his failure so to do. It follows that plaintiffs' motion for judgment should have been sustained.

The judgment appealed from is therefore reversed and cause remanded, with instructions to the trial court to enter judgment in favor of the plaintiffs for the amount of the notes sued upon, with interest and costs.

The Supreme Court acknowledges the aid of District Judge Summers, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for exam-

ination and report. Thereafter, the opinion, as modified, was adopted by the court.