The TRENTON BANKING COMPANY v. THOMAS L. WOODRUFF and others.

That clause in the charter of the Trenton Banking Company which declares, " That the said corporation shall not, directly or indirectly, deal or trade in any thing except bills of exchange, promissory notes, gold or silver bullion, or in the sale of goods which shall be the produce of its lands," was designed to restrain the company within its legitimate sphere of banking, and to prevent their embarking in other kinds of business. The company may, nevertheless, receive and hold bonds and mortgages by way of security for debts due the corporation; and in the absence of proof to the contrary, the court will presume that the corporation came into possession of such securities lawfully, and within the scope of their chartered powers.

Where a bond and mortgage are bequeathed to a *feme covert*, for her use, free from the debts or control of her husband, and the husband of the legatee being the obligor in the bond, and also an executor of the will, cancels such bond and mortgage, without paying the same, such cancellation is a gross fraud, not only upon the estate committed to his charge, but also upon the rights of the wife, against the effects of which this court will interfere for her protection. But it seems that in such case, when the testator had by the very act of constituting his debtor an executor, placed it in his power to practise a fraud upon innocent parties, the court would not interpose to protect the rights of a wife, by establishing the cancelled mortgage, to the prejudice of subsequent mortgagees *without notice*.

The mere fact of the destruction of a bond or other instrument, without authority, can never be set up against the right of him who has the beneficial interest.

[Trenton Banking Co. v. Woodruff et al.]

It is one of the plainest and most common grounds of equity jurisdiction, to guard innocent parties, and especially married women and infants, against fraud and imposition. Such protection will be afforded to a married woman against her husband.

The cancellation of a mortgage on the record, is only prima facie evidence of its discharge, and leaves it open to the party making such allegation, to prove that it was made by accident, mistake or fraud.

On such proof being made, the mortgage will be established, even against subsequent mortgagees without notice.

The rule is now well settled, that a trust, either of real or personal estate, may be created by a direct gift or bequest to the use of the wife, without the intervention of trustees, so as to prevent the husband's enjoyment of the estate; and equity will sustain such trust, and declare the husband a mere trustee for the use of the wife.

A trustee cannot *transfer* a trust estate to his own use, nor will he be permitted to make any profit, gain or advantage to himself, out of the trust estate in his hands.

A notice to the cashier is notice to the bank. He is the authorized agent of the corporation for all purposes within the sphere of their business.

A husband cannot be a witness for his wife, on a question touching her separate estate.

Where the defendants in a cause, by their answer, set up a cancelled mortgage as a subsisting lien upon the mortgaged premises mentioned in the bill of complaint, it is incumbent on them to show that the money was not paid, and that the cancellation was made wrongfully. The complainants are not bound to prove the fact of payment.

The awarding of an issue rests in the discretion of the court, and the power should be sparingly exercised.

On the 24th of September, 1832, the complainants filed a bill for foreclosure, against Thomas L. Woodruff and Ann his wife, George Woodruff and Zachariah Rossell, trustees of the said Ann Woodruff. The bill states, that on the second day of March, 1821, Thomas L. Woodruff and Ann his wife, to secure the payment of a bond bearing date the same day, given by Thomas L. Woodruff to Zachariah Rossell, for one thousand seven hundred dollars, payable on the 2d of March, 1822, with interest, executed to Rossell a mortgage upon the undivided half-part of a house and lot on the north side of Second-street, in the city of Trenton, which said mortgage was duly acknowledged and re-

corded in the clerk's office of the county of Hunterdon, on the day of its execution; and on the 28th of January, 1832, was assigned by said Rossell to the complainants. That the said Thomas L. Woodruff and Ann his wife, " in order to secure the payment of all and every promissory note then drawn or thereafter to be drawn by the said Thomas L. Woodruff, and endorsed by Elias D. Woodruff, and discounted at any bank in the state of New-Jersey," executed to the said Elias D. Woodruff, a mortgage upon the same premises, bearing date on the 17th of October, 1823, which was duly acknowledged, and on the 28th day of the same month of October was recorded in the clerk's office of the county of Hunterdon. That the said Thomas L. Woodruff afterwards drew two promissory notes, amounting to five thousand four hundred dollars, which were endorsed by the said Elias D. Woodruff, and discounted by the complainants, for the use of the drawer, the proceeds of which were received by him. That on the 10th of October, 1834, Elias D. Woodruff died ; and that on the 25th of August, 1827, the last mentioned bond and mortgage were assigned, by one of his executors, to the complainants. That on the 1st of September, 1829, the said George Woodruff obtained a judgment in the supreme court of New-Jersey, against Thomas L. Woodruff, for five thousand nine hundred dollars, and costs: and that on the 18th of May, 1832, Zachariah Rossell, trustee of Ann E. Woodruff, also obtained a judgment against Thomas L. Woodruff, for fourteen thousand three hundred and thirty-seven dollars and twenty-one cents, and costs; both of which judgments are liens upon the mortgaged premises. The bill sets forth no other incumbrances : it alleges that the said bond and notes remain unsatisfied, and prays a decree in the usual form.

The answer of Ann E. Woodruff, and Zachariah Rossell, her trustee, filed on the 9th of March, 1833, admits the material allegations contained in the bill, and by way of defence, states, that Ann E. Woodruff was the only child of Israel Carle, who being seized and possessed of a large real and personal estate, by his last will and testament, bearing date on the 19th day of

April, 1822, among other things, gave and devised all his real estate to the said Ann E. Woodruff during her life, and after her decease, he gave all his real estate in the township of Trenton to to her two sons, Israel C. Woodruff and Aaron D. Woodruff, in severalty, in fee simple; and in the event of the death of either of his said grandsons, he gave his share to the said Ann E. Woodruff, in fee. He also devised and bequeathed all the residue of his estate, real and personal, to the said Ann E. Woodruff, her heirs and assigns, "but neither that nor any other part of his estate, to be subject to the debts or failure of her *then* or any future husband;" and of his said will the testator appointed his wife, Lydia Carle, and his son-in-law, Thomas L. Woodruff, executors; who duly proved the same, and took upon themselves the execution thereof.

The answer further states, that the said Thomas L. Woodruff, in order to enable him to pay for the mortgaged premises in the complainant's bill mentioned, borrowed of the said Israel Carle, in his life-time, three thousand dollars, and to secure the payment thereof, executed to the said Israel Carle his bond, bearing date on the 2d day of March, 1821, in the penal sum of six thousand dollars, conditioned for the payment of the sum of three thousand dollars, in one year, with interest; and that, as a further security for the payment of the said debt, the said Thomas L. Woodruff, and Ann his wife, executed to the said Israel Carle a mortgage upon the premises described in the bill of complaint, bearing even date with the said bond. That the said mortgage was duly acknowledged, on the same day, before Elias D. Woodruff, one of the masters of the court of chancery, which said Elias D. Woodruff is the mortgagee in the second mortgage in the complainants' bill set forth, and was also a subscribing witness to the bond and mortgage given to Israel Carle; and that the said mortgage, on the 15th day of May, 1821, was duly recorded in the clerk's office of the county of Hunterdon. That after the death of the said Israel Carle, his executors caused an inventory and appraisement of his estate to be made, amounting to fifteen thousand two hundred and eleven dollars

and ninety-six cents, in which was included the said bond and mortgage given by Woodruff and wife to Israel Carle—the whole principal and interest of which then remained due and unpaid.

The answer further states, that the second mortgage set forth in the complainants' bill, was in reality given to secure the complainants against any loss, or liability to loss, by reason of discounting the several notes therein mentioned, and was delivered by Elias D. Woodruff, the mortgagee, to the complainants, or their lawful officer, on the 6th of November, 1823; and that at the same time, Pearson Hunt, esquire, the complainants' cashier, gave a receipt signed by himself, in the following words, to wit:—"Trenton, Nov. 5th, 1823. Received of Elias D. Woodruff, a mortgage executed by Thomas L. Woodruff and wife to Elias D. Woodruff, bearing date October 17th, 1823, and recorded 28th day of October, 1823, in vol. 10 of mortgages, pages 123 and 4, clerk's office of the county of Hunterdon. I also admit notice from Elias D. Woodruff of prior incumbrances to Z. Rossell and I. Carle." The answer then charges, that at the time of the execution of the second mortgage mentioned in the complainants' bill, given by Thomas L. Woodruff and Ann his wife to the said Elias D. Woodruff, and at the time that the said mortgage was delivered by Elias D. Woodruff to the complainants, the said E. D. Woodruff and the complainants well knew, and each of them had lawful notice, that the prior mortgage given by Thomas L. Woodruff and Ann his wife to the said Israel Carle, was due and unpaid, and in full force; and that as well because of its being first executed and recorded, as because the said Elias D. Woodruff and the complainants had due and lawful notice thereof, the said mortgage became and was entitled to priority over the second mortgage mentioned in the complainants' bill. That the whole amount of principal and interest of the said bond of three thousand dollars, was still due and owing to the estate of the said Israel Carle, and in equity belongs to the said Ann E. Woodruff, free from the debts or failure of her husband. That the said mortgage is entitled to priority over the second mortgage mentioned in the complainants' bill; and

17

that, if the same has been cancelled or discharged, it has been done without payment or satisfaction, and unlawfully and inequitably, and that the said cancellation is inoperative and void.

The answer further states, that the said Thomas L. Woodruff was the president of the Trenton Banking Company, and being such president, without receiving any payment or satisfaction of the said bond and mortgage, so as aforesaid given by him to the said Israel Carle, and being the acting executor of the said Israel Carle, and a debtor to the estate, and while the said bond and mortgage were due and subsisting, without the knowledge or approbation of the said Ann E. Woodruff, endorsed a receipt upon the said mortgage, acknowledging the payment of the money due thereon, and cancelled the same; which cancellation was fraudulent as regards the rights of the said Ann E. Woodruff.

That the said Thomas L. Woodruff got into his possession all the assets belonging to the estate of the said Israel Carle, deceased, so as aforesaid bequeathed to the said Ann E. Woodruff free from his debts and liabilities, amounting, on the 1st of September, 1827, after the payment of all debts and funeral and testamentary expenses, to fifteen thousand four hundred and seventy-four dollars and twenty-five cents; and being otherwise unable to secure the same to the said Ann E. Woodruff, did, together with his wife, (the said Ann E. Woodruff,) by deed dated the first day of February, 1832, convey unto the said Zachariah Rossell, whatever was given, devised or bequeathed to the said Ann E. Woodruff, by the will of her father, the said Israel Carle, deceased, whether in possession, remainder or expectancy; in trust, nevertheless, for the sole and proper use and benefit of the said Ann E. Woodruff, during her natural life, so that the same should not be in any wise subject to, or liable for, the debts, failures, contracts or liabilities of her present or any future husband, and upon divers other trusts in the said deed contained; which said deed was duly acknowledged, and on the 14th day of February, 1832, was recorded in the clerk's office of the county of Hunterdon.

The answer further insists upon the priority of the mortgage given by Thomas L. Woodruff to Israel Carle, over the second mortgage mentioned in the complainants' bill, and assents to a sale of the mortgaged premises for the purpose of paying the incumbrances in the order specified.

The complainants filed their replication, putting the cause at issue; and the cause came on for hearing at July term, 1838, upon the bill, answer, replication and proofs.

Ann E. Woodruff, and Zachariah Rossell, her trustee and next friend, on the 21st of April, 1834, filed a cross-bill against the complainants in the original cause, praying, among other things, an injunction to restrain them from proceeding at law to recover possession of the mortgaged premises. Under this cross-bill an injunction was issued, and various proceedings had, not material to the points involved in the opinion of the chancellor.

*Wilson* and *Southard*, for complainants.

*Wall* and *Williamson*, for defendants.

The Chancellor. Thomas L. Woodruff, being the owner in fee of a moiety of a house and lot of land in the city of Trenton, executed, in conjunction with his wife, on that property three mortgages. The first bears date the 2d of March, 1821, and is made to Zachariah Rossell, to secure the payment to him of a bond of the same date, for one thousand seven hundred dollars. This mortgage is recorded on the same day it bears date. The second mortgage bears the same date with the first, and is made to Israel Carle, to secure to him the payment of three thousand dollars. This mortgage is recorded on the 15th day of May, 1821. The third mortgage bears date on the 17th October, 1823, and is made to Elias D. Woodruff, to secure to him the payment of any notes which he then had or might thereafter endorse for his brother Thomas, and which should be discounted at any bank in the state of New-Jersey. These mortgages were all given in good faith, and no objection is raised

against them at their inception. Nor is any question made as to the priority of the first named mortgage to Zachariah Rossell. That mortgage was first recorded, and the answer admits its priority. The first and third mortgages have been assigned to the complainants, who file the bill in this case to foreclose the equity of redemption in the mortgaged premises, insisting that all the principal, and large arrears of interest, are due on the first mortgage, and that there is due on the second mortgage the amount of two promissory notes for large sums, endorsed by Elias D. Woodruff, and fairly embraced within the terms stated in the condition of the same. The bill does not mention the existence of the second mortgage, but prays a foreclosure and sale of the premises to satisfy the two mortgages belonging to the complainants as the only liens on the property.

The counsel of the defendants, on the argument, raised an objection to the right of the complainants, under the terms of their charter, to enforce the payment of the first mortgage. This objection arises from the language of the ninth rule in the thirteenth section of the act incorporating "The Trenton Banking Company," which declares that "the corporation shall not, directly or indirectly, deal or trade in any thing except bills of exchange, promissory notes, gold or silver bullion, or in the sale of goods which shall be the produce of its lands." The object of this provision was, no doubt, to restrain the company within the legitimate sphere of banking, and to prevent their branching out into any other kind of business. That this company might secure a debt by accepting the transfer of this kind of security, was not, and cannot be denied. There was, then, authority for this bank in this way, at least, to become lawfully the assignees of this mortgage. No allegation is made by the answer, nor is it attempted to be proved, that the bank came into possession of these securities other than within the scope of their chartered powers. Under such circumstances, the only legal or just inference which can be drawn, is, that the parties came lawfully to be the owners of this bond and mortgage.

The main question, however, in the cause, arises upon the an-

swer of Mrs. Woodruff, the wife of the mortgagor, and Zachariah Rossell, her trustee; and it discloses a mortifying and painful state of facts.  It seems that Israel Carle, the owner of the second mortgage, was the father-in-law of Thomas L. Woodruff, and died in a little more than a year after receiving this mortgage, and by his will gave the residue of his estate (which embraced this bond and mortgage) to his daughter, free and clear of her husband, or his debts, and appointed his widow, and the said Thomas L. Woodruff, his son-in-law, his executors.  The allegation is that Woodruff, availing himself of his situation as executor of his father-in-law, upon coming into the possession of his own bond and mortgage, without a dollar being paid, endorsed on the bond that it was paid, and cancelled the mortgage of record ; thereby defrauding his own family of the provision which a father's kindness had made for his daughter.  That such endorsement was made on the bond, and that the mortgage was cancelled on the very day on which the will was proved, is clear from the proofs in the cause, but under what circumstances such cancellation took place will be further considered hereafter.

I shall for the present consider the case upon the supposition that the cancellation was made without any payment, without stopping to enquire how that fact stands upon the proofs in the cause.  As between the parties themselves, that is, Thomas L. Woodruff and the trustee of his wife, the power of this court, as well as its duty, to interpose in behalf of a wife, or any other cestui que trust, and arrest the evil arising from so gross a fraud, cannot be questioned.  The mere fact of a party destroying a bond or other instrument without authority, can never be set up against the right of him who has the beneficial interest.  It may create embarrassment in making the proof, but if the facts are established, he will be reinstated in his rights.  It is one of the plainest and most common grounds of equity jurisdiction, to guard innocent parties from frauds and impositions, and particularly married women and infants.  This will be done, even against the husband.  It has been settled in this court, that the cancellation of a mortgage on the record is only prima facie evidence of

its discharge, and leaves it open to the party making such allegation, to prove that it was made by accident, mistake or fraud. On such proof being made, the mortgage will be established, even against subsequent mortgagees without notice. *Miller and Stiger* v. *Wack and others,* 1 *Saxton,* 214; *Lilly* v. *Quick,* ante, page 97.

That part of the will of Mr. Carle which embraces the bond and mortgage in question, is in the following words:—" I give, devise and bequeath unto my said daughter, Ann E. Woodruff, her heirs and assigns, all and singular the residue of my estate, real and personal, but neither this nor any other part of my estate to be in any wise subject to the debts or failure of her present or any future husband." It was not denied, that this clause created a clear trust in favor of Mrs. Woodruff. There was at one time great doubt expressed, whether a trust, especially of personal property, could be created, by a direct bequest to the use of a wife, so as to prevent the husband's enjoyment of the estate, without the intervention of trustees; but the rule is now well settled, that equity will sustain such trust, either of real or personal estate, and declare the husband to be a mere trustee for the use of the wife. *Clancey on Rights of Married Women,* 36–8; *Harney* v. *Harney,* 1 *Peere Williams,* 125; 2 *Peere Williams,* 79, 316. What right, then, had the husband to destroy and cancel these instruments without their payment? He stood in the relation of a trustee to his wife. Even in his character of executor, he had no such right: it was a gross fraud upon the estate committed to his charge. A trustee cannot even *transfer* a trust estate for his own use: 2 *Paige,* 202. Nor will he be allowed to make any " profit, gain or advantage" to himself out of a trust estate in his hands. *Schiefflin* v. *Stuart,* 1 *John. Ch. Rep.* 625. Indeed, the books are full of cases showing the arm of a court of equity extended as a protection and shield against the fraud and imposition of trustees. It was asked with force, on the hearing, how this trustee could defend himself on a bill filed against him, alleging these frauds? He could not, upon any principle.

As between the parties themselves, I can hardly suppose any question would ever have been raised. The case is too palpable, and forces the same conclusion upon the common sense of every man. But the establishment of this mortgage must materially affect the complainants, who claim to be mortgagees without notice. If this be so; if they have really taken their last mortgage ignorant of the one now disputed, they have a strong claim for the consideration of the court; for as at present advised, I should not feel willing to interpose in a case where the testator had, by the very act of constituting his debtor an executor, placed it in his power to practice a fraud on innocent parties. The question then of notice to the complainants, becomes most important. That Elias D. Woodruff, the person to whom the complainants' last mortgage was made, had notice of the existence of the disputed one, is manifest. He is one of the subscribing witnesses to its execution, and the person before whom the same was acknowledged. The disputed mortgage bears date on the 2d of March, 1821 : the cancellation took place on the 22d of July, 1822 ; and yet we find, on the 5th of November, 1823, more than fifteen months after such cancellation, the then cashier of the bank gave a receipt of the following tenor :—" Trenton, Nov. 5th, 1823. Received of Elias D. Woodruff, a mortgage executed by Thomas L. Woodruff and wife to Elias D. Woodruff, bearing date Oct. 17th, 1823, and recorded 28th day of October, 1823, in vol. 10 of mortgages, pages 123 and 4, clerk's office, county of Hunterdon. I also admit notice from Elias D. Woodruff of prior incumbrances to Z. Rossell and I. Carle. (Signed) Pearson Hunt, cashier." This paper, if genuine, must have a strong bearing on this cause. It declares, explicitly and plainly, that at the time of receiving their last mortgage, the cashier was informed of the existence of this disputed mortgage, and that it was then a prior incumbrance. This was long after the cancellation. The information is also stated to have been received from Elias D. Woodruff, the very man from whom they received this mortgage, and who, from the whole evidence, appears to have known of the existence of the one now disputed, as he witness-

ed its execution, and acknowledged it as one of the masters of this court, and who, in his certificate of acknowledgment, declares that he made the contents of the mortgage known to the parties. The signature of the cashier to the paper is admitted, but the body is not in his hand-writing. The latter clause of the receipt, admitting notice of the two prior incumbrances, is charged to have been interlined. There is no evidence of such interlineation, except what is drawn from the inspection of the paper itself. I have examined it carefully, and feel bound to say, that I do not see ground for such belief. At all events, there is nothing in the appearance of the paper itself that would justify me in declaring it a forgery. I receive it, therefore, as a genuine paper, and take it as it reads. A court must be well satisfied of the fact of forgery, before it can undertake to predicate upon it any important result. It is also insisted, that, if genuine, still this paper is no notice to the bank. A notice to a cashier is notice to a bank. This must be the rule, otherwise it will be impossible to get on in the ordinary course of business. There is no officer so directly intrusted with its concerns, especially the details of business, as the cashier. He is the authorized agent of the company for all the purposes within the sphere of their business. If the individual who signed that receipt as cashier, was now alive, he might possibly place the subject in a different light; but in the absence of any explanation beyond what the paper itself affords, I can only take it as its very words import, that he received the last mortgage with a knowledge of the two prior incumbrances.

The receipt is dated the 5th of November, 1823, and yet it seems the assignment of this last mortgage was actually not made to the bank until after the death of Elias D. Woodruff, whose executor made the assignment, on the 25th of August, 1827. Some speculation has grown out of this apparent inconsistency. I do not see that this can in any view vary the case. In any event, the receipt shows a notice at its date. But the difficulty, it appears to me, may be easily solved. The mortgage was ultimately to stand as a security to the bank. Elias D.

Woodruff was the endorser to the bank, and reposing, as well he might, confidence in the cashier, it is not unreasonable to suppose he placed the papers in his hands to wait events as they might arise, respecting the notes he had so endorsed. After the death of Mr. Woodruff, it occurred properly enough to the cashier that these papers should be assigned, and the executor accordingly assigned them. The only evidence on this part of the case, as far as I can perceive, is that of Mr. Titus, the present cashier; and that, as he declares himself, is not very distinct. He remembers that about the time, or shortly after the mortgage was given by Thomas L. Woodruff to Elias D. Woodruff, he saw the disputed mortgage. Thomas L. Woodruff brought it into the bank, and handed it to Mr. Hunt, the cashier. There had been some discussion whether it had been discharged : it was wrote upon it that it had been discharged. He states that the mortgage was brought to satisfy Mr. Hunt that it had been discharged, *as he understood*. In his cross-examination, he says, he did *not* hear the *purport* of the conversation between Mr. Hunt and Mr. Woodruff at the time he saw the Carle mortgage handed him. This witness seems rather to *infer* that Woodruff brought the mortgage there to satisfy Mr. Hunt it was cancelled, than to give what the conversation was, for he says he did not know the purport of their conversation. This conversation must have taken place about the time of giving the receipt, for he says it was about the time or shortly after the mortgage was given by Thomas L. Woodruff to Elias D. Woodruff. That mortgage was given on the 17th of October, 1823, and the receipt is dated the 5th of November thereafter. If Mr. Hunt had, as it seems he had, received the mortgage subject to the other two, and there was a discussion about one of them being cancelled, and that too after Mr. Carle's death, by the executor, who was also the maker of the instrument, there was, surely, enough to have put the bank on enquiry. If they did not mean to hold this mortgage subject to the one of Carle, he should, and I think would, have taken up and varied the receipt which he had given. The recollection of what transpired, is not sufficiently distinct in

the witness, to overcome the plain written declaration of the cashier, made at or about the same time, that he took the mortgage subject to the other two.

It is very manifest, the bank did not at this time rest its security for the loans made to Thomas L. Woodruff, on this mortgage. They had the endorsement of Elias D. Woodruff, and he took the mortgage for his protection. Afterwards, upon his death, they obtained this assignment, as the only means left by which they could get their money. I consider, therefore, that the bank had full notice of the existence of this mortgage, and recognized it as a valid prior incumbrance to their own, long after the time of its alleged fraudulent cancellation; and that they cannot, under such circumstances, stand in any other or better situation than the party himself could, in resisting the present effort of the trustee to establish this lien on the property. That trustee is now Mr. Rossell, who has by the act of the parties been intrusted with the whole estate of Mrs. Woodruff derived from her father. It will not do for us to be led away by our strong disapprobation of the conduct of the husband, to disregard the rights of his family. Nor should we allow ourselves to be influenced by the possibility that, through the indulgence of his wife, he may again reap the actual enjoyment of this money. If so, it will be contrary to the express trust. It will be as well the duty as the safety of the trustee, to see that the funds are applied according to the terms of the trust.

Thus far my decision proceeds upon the presumption that Thomas L. Woodruff never paid off this bond and mortgage. To ascertain this fact by any evidence on which to rest, has been my great difficulty in the cause. The answer sets up the mortgage. This is the first we hear of it. There can be no doubt that the allegations in the answer setting up new matter, and that affirmatively, must be sustained by proof. 1 *Saxton,* 209; 6 *Johns. Rep.* 559, 560. This is the settled rule. We then look into the depositions, and find that of Thomas L. Woodruff himself, one of the defendants, much relied on. He was examined by an order of the court, subject to all legal exceptions. He

is the husband of Ann E. Woodruff, in whose behalf he is called. He is clearly an inadmissible witness. In a civil action a husband cannot be a witness either for or against his wife. He cannot be a witness for his wife, from a strong bias in her favor, and from their interests being the same. He cannot be a witness against his wife, as being opposed to the legal policy of marriage. Nor can the husband be a witness for his wife in a question touching her separate estate. The cases cited on the argument fully sustain this objection. *Davis* v. *Dinmoody*, 4 *Term Rep.* 678; *Wyndham* v. *Chetwood*, 1 *Burrow*, 424; *Stuart* v. *Stuart*, 7 *Johns. Ch. Rep.* 229. The deposition of this witness must be rejected, and for all purposes.

It was urged that the complainants were bound to show this mortgage paid off. This is not my view of the case, nor is it the view taken in the case in 1 *Saxton*, before cited. The records show the mortgage cancelled, and the papers, when produced, show on the bond and mortgage an endorsement by the executor that they are paid, and the mortgage has the seals taken off. Under such circumstances, it belongs to the defendants to show that the allegations in their answer are true, to wit, that Thomas L. Woodruff never paid the money on this mortgage, but against right made the endorsement on and cancelled the papers of record. It is further said, that the mortgage could not have been paid, as Woodruff could not be both payer and receiver. Suppose it proved that on the 22d of July, 1822, the day the payment is endorsed, that Thomas L. Woodruff, out of his own funds, discharged a debt against the estate of Israel Carle for an amount equal to this bond and mortgage, and having done so, made this endorsement and cancellation. He then would be both payer and receiver, and yet the transaction would be honest, and the cancellation right. I have looked carefully through the complainants' answer to the cross-bill to see if any admission was there made on this part of the case, but I find none. How, then, do the defendants prove the most essential part of the answer, that Thomas L. Woodruff never paid this

bond and mortgage, but fraudulently cancelled them? Resting here, there would be a total failure in the proof.

There are, however, some very strong reasons for believing that he never did pay the money. In the first place, the payment purports to have been made on the very day the will was proved, and before it is usual with executors to perform any important business of the estate. It is hardly to be supposed that his first act, at so early an hour, would be to pay off so large a debt. In the second place, there is no trace of any payment being made at that time on account of the Carle estate. And in the third place, the receipt of Mr. Hunt, cashier, recognizes the mortgage as a valid and prior incumbrance, more than a year after the alleged payment.

There are facts both ways on this question, open to construction and inference, but of themselves not sufficiently conclusive in my view to found a decree, without the intervention of a jury. The matter to be established lays at the foundation of the whole cause, and upon which the conscience of the court should be well informed. There is, in my view, but one safe and correct course, and that is to direct an issue to ascertain the single fact, whether Thomas L. Woodruff ever paid, or not, this bond and mortgage to the estate of Israel Carle. My private views on the subject not growing out of the proofs of the case, cannot be allowed to operate: they may be founded in great error.

The power of the court to direct this issue, in a case like the present, is recognized in all the books, and is expressly authorized by our statute. The power rests in discretion, and I agree should be sparingly exercised. Nothing but imperious necessity would induce me to take this course. In a case very like the present, on the first hearing, in 1 *Saxton*, 206, chancellor Williamson ordered an issue. In New-York it has often been done. 1 *Johns. Cases*, 436; 6 *Johns. Ch. Rep.* 256.

The cross-bill and answer disclose no new fact, and need not receive any separate consideration. The object of that bill was to injoin the complainants from proceeding in an ejectment to obtain possession of the mortgaged premises.

[Trenton Banking Co. v. Woodruff et al.]

It appeared to me proper, as the case was fully argued, to examine it on its merits.  If it shall result in a verdict declaring the bond and mortgage to have been paid by Thomas L. Woodruff, the claim of the defendants must end there ; if, that it was not paid, then the mortgage must be established and be paid in the order of its original priority.

Let an issue be made up upon the single question, whether Thomas L. Woodruff ever paid, in whole or in part, the bond and mortgage of Israel Carle, to be tried in the supreme court, on the part of the defendants, with leave to use on that trial the pleadings and depositions in the case, subject to all legal objections to the competency of the witnesses, or the legality of their evidence—unless the complainants shall on their part waive the necessity of any further proof on the point.  The question of costs and all other matters are reserved.

Issue awarded.