# MARTIN L. SWEET v. MICHAEL COLLETON AND ADOLPH LEITELT.

*Statute of frauds—Promise to pay the debt of another.*

The verbal promise of the sureties on the bond of a public contractor,
given to secure the payment of labor and material claims, to
repay to a third person the money realized from the discount
of the contractor's note on the strength of the third person's
indorsement, which money the sureties receive, and agree to
apply in payment of said claims, is not within the statute of
frauds.

Error to Kent. (Adsit, J.) Argued June 8, 1893.
Decided July 25, 1893.

*Assumpsit.* Defendants bring error. Affirmed. The
facts are stated in the opinion.

*Fletcher & Wanty,* for appellants.

*G. A. Wolf (Bundy & Travis,* of counsel), for plaintiff.

McGRATH, J.  One Britton had entered into a contract with the city of Grand Rapids for improving a street. Defendants were sureties upon his two bonds, conditioned, one to pay all indebtedness for labor and materials, and the other for the performance of the work. In the course of the work Britton had become in arrears to his employés, and applied to plaintiff for assistance in getting the necessary money with which to liquidate this indebtedness. Plaintiff agreed to assist him, and to secure plaintiff Britton gave him an order upon' the city for estimates as they became due. Before the order was presented to the city for acceptance, and before plaintiff had advanced any money or incurred any liability, defendant Colleton, who knew of the indebtedness, who had become suspicious of Britton, and of whom certain of the unpaid laborers had demanded their pay, induced the city officials to refuse to accept the order given by Britton to plaintiff. Thereupon plaintiff declined to furnish the money or lend his assistance. Britton then arranged a meeting between defendants, plaintiff, and himself at the bank of which plaintiff was president. At that meeting Britton executed a note for $500, plaintiff indorsed it, and the amount was paid over to defendants, who applied it to the liquidation of the labor claims.

The case was tried before a jury, and the court found:

"That on November 16, 1887, the parties to this action, together with said Britton, met, and the following arangement and agreement was made: The plaintiff was to advance $500 to the defendants, to be paid to said laborers and material-men, and the defendants were to repay the same to plaintiff; that the money was so paid to and received by defendants; and defendants then and there agreed to repay the same to plaintiff, which they never did, and absolutely refuse to do."

It is insisted that the testimony does not support this finding. Plaintiff testified that he told defendants that, as

the order had been countermanded, he would not have anything to do with the matter; and they said "if I would pay the money over to them they would pay me back;" that, on the strength of that, the note was made and delivered over to the bank, and the money was paid over to Colleton.

"The money was obtained on my credit. They did not say they would pay the bank, because they knew the bank was loaning it on my credit,—on my indorsement. They did not say they would pay the note if Britton didn't; they said they would pay me. The bank loaned this money entirely on my indorsement."

Defendants deny any promise whatever. Britton was wholly irresponsible. The theory of plaintiff, supported by Britton, is that defendants were brought to the bank for this very purpose. Defendants' theory, that they were sought out and brought there for the sole purpose of receiving the money, is unsupported by the circumstances. Their presence was not necessary to enable Britton to procure the money upon his own credit. They had frustrated his plans for getting the money, and did not in that interview withdraw their opposition to the acceptance of the order. Their action was not calculated to strengthen Britton's credit. Plaintiff had required the order as security, and had not relied on Britton's responsibility. Without the order plaintiff had no idemnity. The testimony of plaintiff and Britton, corroborated as it is by the circumstances, supports the finding. It is a mere play upon words to say that plaintiff did not advance the money. He caused it to be furnished.

This suit is not brought upon the note, but upon defendants' promise. The relation of debtor and creditor did not exist between Britton and plaintiff when the promise was made by defendants. Their's was the original promise upon which plaintiff relied. Defendants did not promise

to pay the note or the bank. Plaintiff did not expect Britton to pay, and did not afterwards look to him. When defendants made the promise, it was to pay an indebtedness to plaintiff, then originating. It was a promise to pay their own debt. Although the money obtained was used to pay a debt for which Britton was primarily responsible, yet it was one for the payment of which defendants were being importuned and were sureties. Their purpose was to promote their own interests. The consideration was therefore ample.

In *Potter v. Brown,* 35 Mich. 274, Potter had failed in the performance of an undertaking to become co-signer of a note, and to pay the note at maturity, in consideration of which promise Brown signed it. The note was a joint and several note, signed by Brown with Shively and Maynard, and was payable at the bank to the order of the cashier. There was evidence tending to show that the note was intended to be used to pay Shively's debt, but, as between Brown and Potter, the loan was obtained on behalf of Potter. The Court say:

> "The fact that Potter might use the money for Shively's benefit would not make it any the less Potter's money, and the ultimate purpose to which it was to be applied could not control.   *   *   *   The note was a new debt, created to borrow money of the bank,   *   *   *   which Potter was to receive and advance as his own to Shively."

The test to be applied is whether the party sought to be charged is the principal debtor, primarily liable, or whether he is only liable in case of the default of a third person; whether the party promising contracted an independent obligation of his own, or whether his position to the creditor was that of surety merely. The liability of defendants was in no sense contingent, unless we assume what defendants do not claim, viz., that their promise was to pay the note in case of Britton's default. Defendants insist that

they made no promise. The giving of the note to the bank was not the original promise, nor did it concern defendants how the money was procured. The credit was given to them. They promised to . pay plaintiff. That promise was an independent one. As between the parties to this suit, Britton's liability, if any, was contingent, and his promise must be regarded as collateral, if in any event plaintiff could enforce it.

The judgment is therefore affirmed.

HOOKER, C. J., LONG and GRANT, JJ., concurred. MONTGOMERY, J., did not sit.