GOTTA *v.* PEOPLES STATE BANK.

1. BANKS AND BANKING—CONTRACTS—EVIDENCE—SUFFICIENCY.
   Finding of jury that bank agreed to pay labor bills incurred in gathering, preparing, and shipping lumber in which it had interest as security for advancements, *held,* justified by testimony.

2. FRAUDS, STATUTE OF—BANKS AND BANKING—PROMISE TO PAY LABOR BILLS INCURRED IN REALIZING ON SECURITY.
   Promise of bank to pay labor bills incurred in gathering, preparing, and shipping lumber in which it had interest as security was direct obligation of bank and not debt of another, and therefore was not within statute of frauds requiring promise to be in writing (3 Comp. Laws 1929, § 13417, subd. 2).

3. BANKS AND BANKING—ULTRA VIRES ACTS—OBLIGATION INCURRED IN REALIZING ON SECURITY.
   Bank may not repudiate obligations incurred in realizing on security which it converted into cash to its advantage, on ground that in so doing it engaged in *ultra vires* acts.

Appeal from Gogebic; Driscoll (George O.), J. Submitted January 7, 1932. (Docket No. 63, Calendar No. 36,109.) Decided March 2, 1932.

Assumpsit by Peter Gotta against Peoples State Bank of Bessemer on time orders issued in connection with lumbering operations. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*William S. Baird,* for plaintiff.

*William F. Pellow (Ivan D. Wright,* of counsel), for defendant.

BUTZEL, J. Paul N. Massie and Oscar Anderson, in order to finance their lumber operation, borrowed on their notes from the Peoples State Bank of Bessemer, Michigan, which they secured from time to time by assignments, having the effect of bills of sale, of the timber and products on the operation. At the end of the winter the work came to a standstill, owing to the bank's refusal to extend further credit. Considerable mining timber and tie·' cuts remained either piled up along the roads or still lying on the ground. Massie claims that he saw Mr. Hagerman, cashier and vice-president of the bank, who agreed that the bank would pay the expense of gathering, preparing, and shipping the lumber to parties whose accounts had been assigned to the bank, and apply the surplus from the proceeds on the notes. This expense consisted principally of labor, which the bank agreed to pay on time orders issued by Massie. Peter Gotta, plaintiff, cashed these time orders for laborers on Massie's statement, corroborated by Hagerman, that the bank would pay them. Gotta's daughter also testified that when she brought the orders to the bank Hager-

man told her it would pay them. The bank realized an amount in excess of the time orders from the lumber products thus prepared and shipped. The orders are for small amounts and aggregate $601.74. Gotta also claims that Hagerman again told him that as soon as the proceeds from the sales of the lumber products came in, the bank would pay the orders. The bank denied making such an agreement either with Massie, Gotta, or his daughter. It claimed that the orders were only left for collection from Massie. The questions of fact were fairly presented to the jury, who found in plaintiff's favor. The testimony fully justifies the verdict.

On appeal, defendant claims it cannot be called upon to answer for the debt and default of another on account of the absence of a written agreement under 3 Comp. Laws 1929, § 13417, subd. 2. The evidence was sufficient to warrant a finding of a direct obligation from the bank to pay for the labor. It was not within the statute of frauds. In *Comstock* v. *Norton,* 36 Mich. 277, defendant banker was held liable for time orders issued on a lumbering contract. See, also, *Sweet* v. *Colleton,* 96 Mich. 391; *Hagadorn* v. *Stronach Lumber Co.,* 81 Mich. 56; *Wenzel* v. *Johnston,* 112 Mich. 243.

It is further claimed that it was an *ultra vires* act for the bank to engage in the lumbering business, and that a banking corporation has no power to engage in a business foreign to its purposes. The bank did not go into the lumbering business, but found itself indirectly in it when it discovered that the collateral given by Massie and Anderson was worthless unless realized upon as suggested by Massie. The bank could not repudiate obligations incurred in realizing on security which it converted into cash to its advantage. *Emigh* v. *Earling,* 134 Wis. 565

(115 N. W. 128, 27 L. R. A. [N. S.] 243), affirmed by *Rankin* v. *Emigh,* 218 U. S. 27 (30 Sup. Ct. 672); *Shawnee Nat'l Bank of Oklahoma* v. *Purcell Wholesale Grocery Co.,* 34 Okla. 34 (124 Pac. 603, 41 L. R. A. [N. S.] 494). In *Sutley* v. *Polk County State Bank of Crookston,* 162 Minn. 118 (202 N. W. 338), the court said:

"We discover nothing in this course of dealing, other than an effort on the part of the cashier to make the bank's interest more secure. He was looking after what he considered the best interest of his bank, trying to perpetuate its security upon a past-due obligation. His authority to act in the premises did not require a resolution of the board of directors nor was it beyond his usual and incidental powers as cashier. * * * Were it otherwise, there would be no safety in dealing with banking officials, unless the board of directors remained in session and open to public interview during banking hours. * * *

"The cashier of a bank is generally regarded as the chief acting executive officer of a bank. The bank is liable for his acts, while engaged in its affairs, to the same extent that individuals are liable under like circumstances. * * * So, a bank may engage in such business as is necessary to preserve property upon which it holds a lien, and, when the same is undertaken in an effort to save *its* security, it is not *ultra vires.*"

The judgment is affirmed, with costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.