The defendant appeals from a judgment of $5,254.10 in favor of the plaintiff, entered in the Superior Court, Law Division, Union County. Plaintiff sued defendant on its automobile liability policy to recover moneys paid by the plaintiff to satisfy a judgment obtained against him by one Brokes, and for moneys paid by the plaintiff to counsel to defend him in the Brokes suit. Two questions are raised: (1) the validity of the loan receipt involved, and (2) the admissibility of a certain financial statement. *Page 260 
In the early part of 1938 plaintiff, Parrette, owned three Packard cars (hereinafter referred to as cars A, B and C) which he used in his taxicab business, and one Packard car (hereinafter referred to as car D) which he used in his livery business. Pursuant to the compulsory insurance requirements concerning taxicabs (R.S. 48:16-1 et seq.), he had insured cars A, B and C with the Eureka Casualty Company. Pursuant to the compulsory insurance requirements concerning cars used in the livery business (R.S. 48:16-13 et seq.), he had insured car D with the Phoenix Indemnity Company for a one-year period beginning March 24, 1938, under a policy in which the use was stated "Funerals, weddings and occasional long trips." Later, he sold car A and substituted car D in lieu thereof for use in his taxicab business. This substitution was properly endorsed on the Eureka policy covering the cars used as taxis, but the Phoenix policy covering car D in the livery business was not cancelled. When the Eureka Casualty Company announced its termination of the taxicab insurance business. Parrette sought insurance from the Citizens Casualty Company to replace the Eureka policy. The Citizens issued its "Taxicab and Public Livery" policy to Parrette for a one-year term beginning June 1, 1938, covering three Packard taxicabs, but in copying the serial and motor numbers from the Eureka policy, the endorsement substituting car D for car A was overlooked and the policy as written covered cars A, B and C. The Citizens policy and the Phoenix policy each had a $5,000 maximum liability coverage for personal injuries, and each had a provision further limiting the coverage, which reads:
"OTHER INSURANCE. If the named insured has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability expressed in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."
The premium for the personal injury liability coverage charged by both Eureka and Citizens was $120 per car covered *Page 261 
as a taxi, while the premium charged by Phoenix was $50 on the car covered for use in the livery business.
On June 7, 1938, one Brokes suffered bodily injury caused by automobile D while being used as a taxi. Parrette promptly notified Citizens of the accident, and when Brokes started suit Parrette forwarded the summons and complaint to Citizens, requesting it to assume liability and defend the action in accordance with the terms of its policy. Citizens refused to assume liability or to defend the action, and returned the summons and complaint to Parrette, contending that its policy did not insure Parrette for liability arising out of the accident.
After the Citizens returned the suit papers to Parrette, he communicated with the Phoenix Indemnity Company, which likewise denied coverage and refused to defend. Parrette then made an arrangement with a Mr. Dawson, a New Jersey attorney, who also was an attorney for the Phoenix Indemnity Company, under which Dawson defended Parrette in the Brokes action and also represented him in a policy reformation suit against Citizens. On July 21, 1938, Parrette's suit against Citizens for reformation of the policy was instituted. In Brokes' suit against Parrette, judgment was entered on June 29, 1939, in favor of Brokes, for $5,500 and $118.86 costs of suit. Although Phoenix had originally denied coverage, there was admitted in evidence a letter dated March 21, 1939, addressed to Parrette, from a Thomas F. O'Boyle, associated with the Phoenix Indemnity Company, as follows:
 "Re: AL150728 — Alador Brokes vs. Anthony Parrette
"In the beginning of this case we took a stipulation of non waiver on the coverage question. After the examination of all the facts that have been presented to us up to the present time, we feel that you have coverage under our policy, and we are therefore withdrawing the stipulation and defending the matter as covered and as if no stipulation had been taken."
The Brokes judgment was paid on November 28, 1939, by a check of Phoenix made payable to Brokes and his attorney, and warrant for satisfaction filed the following day. The *Page 262 
arrangement for the satisfaction of the judgment was made by Dawson. Parrette testified that he contributed $500 of his own funds toward the amount paid in satisfaction and that $5,254.10 was paid by means of a loan he secured from Phoenix and for which he executed a loan agreement. He testified also that Phoenix denied any coverage at the time the loan was arranged. The loan receipt provided:
"Loss Number ____
 "LOAN RECEIPT
"Dated November 24, 1939.
"$5254.10
"RECEIVED FROM PHOENIX INDEMNITY COMPANY INSURANCE COMPANY the sum of $5,254.10 Dollars as a loan, without interest, under Policy No. A-63416, repayable only in the event and to the extent that any net recovery is made by us from any person or persons, corporation or corporations, or other parties, on account of an injury for which the undersigned may be liable occasioned to Aladar Brokes on or about 7th day of June 1938.
"The Insurance Company has the option of paying the claimant direct on our behalf.
"As security for such repayment, we hereby pledge to said Phoenix Indemnity Company whatever recovery we may make from Citizens Casualty Company or any other person, firm or corporation and we hereby agree to promptly present claim and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, through whose negligence the aforesaid loss was caused, or who may otherwise be responsible therefor, or for the payment thereof with all due diligence, in our own name, but at the expense of/and under the exclusive direction and control of the said Phoenix Indemnity Company.
"[SEAL] Insurance Company. "In Presence of: ANTHONY PARRETTE. "F.A. MARTIN "Notary Public, N.J."
On January 20, 1941, the litigation for reformation of the Citizens policy was concluded with the entry of a decree that the Citizens policy be reformed so that it covered Parrette's car D, the car involved in the Brokes suit.
The present suit against the Citizens was instituted by Parrette on April 8, 1941. Citizens admitted that its policy covered car D when involved in the Brokes accident, but pleaded (1) that Parrette had suffered no loss within the *Page 263 
meaning of Citizens' policy, and (2) that Citizens' liability, if any, was limited to one-half the $5,000 coverage under the "Other Insurance" provision (above), because the Phoenix policy also covered. We are not concerned with the second defense pleaded, because Citizens did not urge it below and chose to try the case solely on the theory that there was no liability under its policy.
Defendant's first point is that the court erred in denying its motion to dismiss at the end of the plaintiff's case, and likewise erred in denying its motion to dismiss or direct a verdict in its favor at the end of the entire case. Under the well-established rule, the two contentions under this point will be resolved into the question whether or not the dismissal or direction of a verdict was properly refused at the end of the case. Beck v. Monmouth Lumber Co., 137 N.J.L. 268 (E. A.
1947). Defendant argues that the court below should have found, as a matter of law that the loan receipt arrangement was wholly invalid and that Phoenix actually paid the money mentioned in the loan receipt pursuant to its absolute obligation under its policy. The loan receipt arrangement is said to be wholly invalid because it was a subterfuge, served no legitimate interest, and was an attempt to circumvent the statutes of this State.
To the extent that a contingent liability under a policy is involved, a loan receipt arrangement such as this is valid and is consonant with the needs of commerce and the demands of justice.Luckenbach v. W.J. McCahan Sugar Refining Co., 248 U.S. 139,63 L.Ed. 170, 171 (1918). The liability of Phoenix, if any, under its policy, was a fixed liability for one-half the $5,000 coverage and a contingent liability for the balance of the $5,000 coverage under the "Other Insurance" provision of its policy, the contingency being whether or not Citizens was also liable under the Citizens policy. Therefore, the loan receipt arrangement was clearly valid to the extent of the one-half the amount involved, which represented the contingent liability, if any, of Phoenix. Since the arrangement was valid at least as to one-half the amount involved. Citizens' motion, which depended on the total invalidity *Page 264 
of the arrangement, was properly denied. In denying the motion, it was not necessary to decide whether the arrangement was valid as to the other half involved, or whether Phoenix was or was not liable on its policy, because these questions would arise only if Citizens' motion was also addressed to partial invalidity of the arrangement or if Citizens pressed its second pleaded defense. In its endeavor to escape liability entirely, Citizens waived its second defense under which, if Phoenix was liable, Citizens would be liable for only one-half the amount involved. Citizens made its bed and it must lie in it.
Defendant's second point is that the court erred in overruling Citizens' offer of the annual financial statement of the Phoenix Indemnity Company, filed with the New Jersey Banking and Insurance Commissioner for the year ending December 31, 1939. The statement offered fills thirty-four printed pages in the appendix. The answer given to the court's question as to what in the statement was considered relevant, was: "There is provision in there as to loans, their assets, liabilities, secured loans, which they have to enumerate. All their investments and all their transactions. As far as loans are concerned it is negative." The court ruled that the statement was meaningless without some explanation. With this we are in accord.
The judgment under appeal is affirmed. *Page 265