9 N.J. Super. 153 (1950)
75 A.2d 546
THE CITY NATIONAL BANK AND TRUST COMPANY OF SALEM, PLAINTIFF-APPELLANT,
v.
MORANT HASSLER, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued August 28, 1950.
Decided September 15, 1950.
*155 Before Judges JACOBS, BIGELOW and WM. J. BRENNAN, JR.
Mr. Robert W. Richman argued the cause for the appellant.
Mr. Joseph Narrow argued the cause for the respondent (Mr. George S. Friedman, attorney).
The opinion of the court was delivered by JACOBS, S.J.A.D.
The plaintiff bank filed a complaint which alleged that the defendant Hassler had executed a promissory note dated August 8, 1947, in the face amount of $1,612.13 and sought recovery of the amount due thereon. The defendant Hassler filed an answer which admitted execution of the promissory note but denied liability and asserted, by way of counterclaim, that he performed work valued at $1,612.13 on the premises of Charles Rudolph on the basis of an independent promise by the plaintiff to pay therefor and sought recovery of that sum. At the trial it appeared that the defendant had inadvertently failed to give credit for a $500 payment he had received for his work and he acknowledged liability in that sum. The Court submitted the matter to the jury instructing it, however, that there was at least $500 due to the bank. The jury evidently decided the disputed issues in the defendant's favor and returned a verdict for plaintiff in the sum of $660.25 which represented the $500 plus interest, etc. No objections were taken to the charge of the court but the plaintiff has appealed on the ground that judgment should have been directed in its favor for the full amount claimed on the note.
In 1946 Charles Rudolph, trading as Green Hill Farms, arranged for the construction of a milk bottling plant at his premises located in Salem County. The construction was *156 being financed by the plaintiff bank which received from Rudolph two mortgages aggregating almost $40,000. The bank's cashier, Mr. Lounsbury, actively represented the bank in connection with the matter and payment of all construction bills was made by checks drawn from a check book kept at the bank and signed by Rudolph and Lounsbury. The defendant was engaged to do the plumbing and began work in October, 1946; he worked until November 6, 1946, but then discontinued because he was fearful that he would not be paid. Thereafter there were conversations at the bank during which Lounsbury and Rudolph asked him to resume work. Finally, according to the defendant's testimony, at a conference at the bank prior to December 10, 1946, Lounsbury said to him, "We would like to get the job done and get Mr. Rudolph in operation, so to go ahead and complete the job, the Bank will see that you get your money." Rudolph's testimony was that Lounsbury told the defendant that "the money would be there when the job was completed."
Following Lounsbury's statement the defendant resumed work on December 10, 1946, and thereafter completed his job. His bill was $1,612.13 and he testified that he looked to the bank for its payment. On August 8, 1947, he executed and delivered his note in the sum of $1,612.13 and his bank account was credited in that sum. A note dated August 8, 1947, in the sum of $1,612.13 and payable to and endorsed by the defendant was signed contemporaneously by Rudolph and delivered to the bank. The defendant's testimony was that he did not understand the transaction but that Lounsbury had told him that if he signed the note he could receive the money due him "on the Green Hill job" and he signed the note "for what I thought was payment due me on the job out there." He acknowledged at the trial that he had inadvertently neglected to give credit for a $500 payment on account and that his bill should have been $1,112.13.
At the trial the bank moved for judgment for the full amount claimed, on the defendant's opening, again at the close of the defendant's case, and again at the close of the *157 entire case. The three motions were denied and although the bank on its appeal deals with the denials separately it would seem clear that the only one properly before us for consideration is the denial at the end of the case. See Parrette v. Citizens Casualty Company of New York, 5 N.J. Super. 258, 263 (App. Div. 1949); certif. den., 3 N.J. 502 (1950); Glass v. American Stores Co., Inc., 110 N.J.L. 152, 155 (E. & A. 1933). If the entire testimony warranted submission of the cause to the jury then the final motion for direction of judgment in the entire amount claimed was properly denied and errors on the earlier motions would not be cause for reversal.
In support of its position that there should have been a direction of judgment against the defendant on his counterclaim based upon the oral promise of payment made by the cashier, the bank relies upon (1) the Statute of Frauds (R.S. 25:1-5) and (2) the lack of authority in the cashier.
Under the Statute of Frauds a promise to answer for the debt of another must be in writing; however, our courts have held that if the promise is an original one, rather than a collateral undertaking, it need not be in writing and that the ultimate test is "to whom was credit in fact given." See Federal Wine and Liquor Company v. Jabberwock Country Club, 120 N.J.L. 331, 332 (E. & A. 1938). There was evidence from which it could reasonably be inferred that the bank, through its cashier, made an original promise, enforceable though oral, to pay the defendant if he completed the plumbing job and the defendant resumed work in reliance thereon. Notwithstanding the bank's contention that the cashier's assurance was no more than a promise to see that Rudolph paid for the work, the issue was properly left to the jury to determine, as it did, that in the light of all of the circumstances the statement was properly taken by the defendant to be a direct promise that the bank would pay him. See Mulholland v. Jones, 83 N.J.L. 604, 606 (E. & A. 1912); Paul & Hoffman v. Haber, 88 N.J.L. 379 (E. & A. 1915). The contention has been advanced that the promise *158 was without consideration but we consider it to be without merit. In the first place, the defendant's work pursuant to the promise was detriment to him which may constitute consideration; in the second place, there was benefit to the bank in having the plant completed so that Rudolph could operate it and start paying off his mortgages and this may constitute consideration. Cf. Joseph Lande & Son, Inc., v. Wellsco Realty, Inc., 131 N.J.L. 191, 198 (E. & A. 1943).
Insofar as the bank's contention that the cashier Lounsbury lacked authority to make the promise on its behalf is concerned, we consider that there was sufficient evidence of apparent authority to warrant submission of that issue to the jury. It has been said that a cashier of a bank has broad inherent powers which are perhaps greater than those possessed by any other bank officer. 4 Michie, Banks and Banking (1931), p. 97. Cf. Trenton Banking Company v. Woodruff, 2 N.J. Eq. 117, 128 (Ch. 1838). Lounsbury actively participated on the bank's behalf and no construction bills were paid except by checks signed by him, along with Rudolph, from funds made available by the bank. After the defendant stopped work the conversations relating to his resumption were held at the bank with Lounsbury and Rudolph; the bank had advanced substantial sums, was advancing more sums from the available funds, and was interested in having the plant completed and in operation so that Rudolph could start paying off his mortgages. The circumstances gave rise to the appearance and belief, upon which the defendant was found to have justifiably relied, that the promise of payment on the bank's behalf was within the proper exercise of the broad powers of the cashier. See Gotta v. People's State Bank of Bessemer, 257 Mich. 221, 241 N.W. 170 (Sup. Ct. 1932); Sutley v. Polk County State Bank of Crookston, 162 Minn. 118, 202 N.W. 338 (Sup. Ct. 1925).
In the course of the bank's brief the assertion is made that the court erred in excluding several questions designed to establish that the cashier's promise was never authorized by resolution of its board of directors or similar *159 formal action. The statement of questions involved and points in its brief make no reference whatever to any rulings on evidence and consequently they need not be considered. See Rule 1:3-2(c). In any event, the rulings would not appear to be material or prejudicial since it was not disputed below that there had not been any pertinent resolution or similar express grant of authority and the controverted issue was whether there was implied or apparent authority.
We find no error in the submission of the defendant's counterclaim to the jury; its verdict constituted a finding thereon in the defendant's favor sufficient to enable the judgment to withstand the appellant's present attack. Accordingly, we have no occasion to consider the admissibility, apart from the counterclaim, of the defense to the note on the asserted ground that it was executed by the defendant to evidence the bank's payment of his bill. Cf. Schmid v. Haines, 115 N.J.L. 271, 274 (E. & A. 1935); Reconstruction Finance Corp. v. Gohl, 19 N.J. Misc. 545, 547 (Sup. Ct. 1941); Michie, supra, p. 118.
The judgment is affirmed.